(August 22, 1985)

■ BRUCE BROWN, Appellant, v V&R ADVERTISING, INC., et al., Respondents, et al., Defendant.—Order of the Supreme

Court, New York County (Robert E. White, J.), entered December 6, 1984, granting defendant V&R Advertising, Inc.'s (V&R) motion to compel arbitration; staying permanently plaintiff's action against V&R and the action against defendants Liebenson, the Kiplinger Washington Editors, Inc. (Kiplinger) and the other unnamed defendant, pending the completion of the directed arbitration proceeding, is affirmed, without costs or disbursements.

Plaintiff Brown is an actor specializing in TV commercials. He is a member of the American Federation of Television and Radio Artists (AFTRA). The union, upon behalf of its members, entered into a collective bargaining agreement with the entertainment industry and its producers. V&R, a commercial advertising producer, as well as Brown, were bound by the 1982 AFTRA collective bargaining contract. The other defendants, manufacturers of products whose commercials were produced by V&R, were admittedly not signatories to the contract. The contract provided for a broad arbitration clause to resolve *all* disputes relating to the contract between the parties bound by the AFTRA collective bargaining agreement.

Thus, the arbitration clause in the AFTRA contract provided, in pertinent part (para 57, [C], [D]):

"57. ARBITRATION

"All disputes and controversies of every kind and nature whatsoever between any Producer and the Union or between any Producer and any performer arising out of or in connection with this Contract, and any contract or engagement (whether overscale or not and whether at the minimum terms and conditions of this Contract or better) in the field covered by this Contract as to the existence, validity, construction, meaning, interpretation, performance, non-performance, enforcement, operation, breach, continuance, or termination of this Contract and/or such contract or engagement, shall be submitted to arbitration in accordance with the following procedure * * *

"C. The word 'Producer' as used in this Contract includes any third person to whom a commercial has been sold, assigned, transferred, leased or otherwise disposed of. Any Producer including such third party 'Producer' may file with the Union the name and address of an available person in New York City, or in Los Angeles, upon whom service of a demand for arbitration and other notices and papers under this paragraph may be made. If such name and address is not on file with the Union, or if although on file the named person is not

available, the Producer irrevocably appoints the Secretary of the American Arbitration Association as his or her agent to accept service and receive all notices, demands for arbitration and service of process in actions on the award in any suit by the Union or Union members. Producer further agrees that such notices, demands for arbitration and other process or papers may be served on the foregoing persons by registered mail sent to their last known address with the same force and effect as if the same had been personally served.

"D. The parties agree that the provisions of this paragraph shall be a complete defense to any suit, action or proceeding instituted in any federal, state or local court or before any administrative tribunal with respect to any controversy or dispute which arises during the period of this Contract and which is therefore arbitrable as set forth above. The arbitration provisions of this Contract shall, with respect to such controversy or dispute, survive the termination or expiration of this Contract."

Defendant V&R, as a commercial producer, contracted with plaintiff to perform in two TV commercials, for products manufactured by Kiplinger (*Changing Times* magazine), and for Star Phone (by a manufacturer unnamed as a defendant). Defendant Liebenson was a vice-president of defendant V&R. Accordingly, the V&R employee contract with Brown to perform in the TV commercials was governed by the terms of the AFTRA collective bargaining agreement, and particularly the terms therein as to fees and compensation, as well as terms of employment in the performance of such commercials.

According to defendant V&R, plaintiff was employed by defendant V&R to appear in commercials as spokesman for Star Phone and *Changing Times,* and V&R was obligated to pay plaintiff the so-called holding fee, during the first (13-week) "cycle", as defined in the AFTRA contract (para 31). The so-called cycle period was, as to the Star Phone commercial, to commence in June 1983 and to expire in September 1983, while the *Changing Times* commercial was to expire in November 1983.

A dispute arose between Brown and V&R over the timeliness of the payment of the so-called holding fee and over defendant's right to renew the commercials for a second 13-week cycle. Brown claimed that by reason of the untimeliness of payment of the original holding fee, defendant V&R was not entitled to renew the subject TV commercial beyond the first cycle; i.e., the failure to pay the holding fee terminated

the commercial contract as to the Star Phone commercial in September 1983, and as to the *Changing Times* commercial in November 1983. Defendant V&R, of course, disputes this contention.

Plaintiff thereafter commenced the instant action, but instead of alleging causes of action in breach of contract, he alleged statutory causes of action for invasion of privacy, or violation of his rights to privacy (under both statute and common law) by reason of defendant V&R's showing the "second cycle TV commercials without plaintiff's consent." Several statutory violations of a number of States were cited including New York Civil Rights Law § 51. As well, causes alleging violation of his common-law rights to privacy were also contained in the complaint.

Various defendants moved to compel arbitration, urging that the dispute is one that comes within the purview of the broad arbitration clause of the AFTRA contract. Defendants urged, in seeking to compel arbitration, that the subject claims were arbitrable under paragraph 57 of the AFTRA contract, which was still in force and effect in 1983 when the subject dispute arose, and that specifically under paragraph 57, subdivision D (*supra*), plaintiff is barred from bringing this action and is compelled to go to arbitration.

Special Term directed arbitration and stayed the action against V&R permanently, holding that notwithstanding the form of the action, the causes in the complaint are sufficiently referable to the contractual rights of plaintiff under the AFTRA contract (including the rights of termination; *see*, para 57) as to come within the ambit of the arbitration clause.

Furthermore, although the court noted that the other defendants are not signatories to the AFTRA contract and thus are not bound to its arbitration clause, the claims against them are "derivative" of the claims against V&R, and are sufficiently similar so that the arbitration proceeding might resolve the disputed issues as against these defendants. Hence, the court stayed the action as against these defendants pending resolution of the arbitration proceeding (citing *Edwards v Bergner*, 22 AD2d 808).

On appeal, Brown urges that this order/determination was erroneous since the arbitration clause does not encompass statutory claims which arose after termination of the contract. Furthermore, he urges that since certain defendants are non-signatories to the contract, and plaintiff has the right to bring a plenary action as against them, to compel arbitration in

these circumstances would involve splitting causes of action and allowing a multiplicity of lawsuits, which the courts seek to avoid.

Furthermore, plaintiff urges that since exemplary damages were also sought, and the arbitrators are not empowered to award such damages, arbitration cannot grant complete relief.

The main ground for reversal urged by plaintiff is that the violation of his statutory and common-law right to privacy involves strong public policy considerations and hence should not be submitted to arbitration.

It is true that in certain instances, where a "statutory" cause of action reflects a strong public policy consideration, the courts will not enforce an arbitration agreement notwithstanding the existence of a relationship between the arbitration contract and the dispute involved as would normally warrant arbitration.

Thus, in the case cited by plaintiff, *Matter of Aimcee Wholesale Corp. (Tomar Prods.)* (21 NY2d 621), the Court of Appeals held that in a breach of sales contract case, where the sales contract contained a broad arbitration clause and a counterclaim was asserted alleging discriminatory practices in violation of the State Donnelly Act (antitrust law, General Business Law § 340 [1]) and Federal antitrust laws (the Clayton Act, 15 USC § 12 *et seq.*), that strong public policy considerations precluded arbitration.

In so holding, the court noted that strong public policy considerations are reflected in the antitrust laws, so that the rights of the public, and not solely that of the parties to the litigation, are involved. Hence, such important (public policy) issues as are involved in alleged violations of the antitrust laws should not be left to the arbitrators to decide. Furthermore, the Attorney-General may have to be brought into the proceeding, which is further reason for denying arbitration where arbitration is confined to the signatories to the agreement (21 NY2d, at p 627).

Likewise, in the cited Court of Appeals case of *Matter of Wertheim & Co. v Halpert* (48 NY2d 681), the court recognized a similar exception to the rule favoring arbitration. Thus, the court held that such arbitration clauses are unenforceable where substantive (statutory) rights, expressing a strong public policy consideration, are involved that must be judicially enforced. Involved in *Wertheim* was a discrimination claim under both the local (city) and Federal antidiscrimination statutes.

Such is not the case here, and so *Aimcee* (*supra*) and *Wertheim* are readily distinguishable, and inapposite. Thus, while plaintiff is claiming violations of his statutory and common-law rights to privacy, this is a matter of pure *private* right. It does not involve strong public policy considerations that affect the public generally as would require judicial (court) enforcement, rather than arbitration, under the rule of *Aimcee* (*supra*). (*Cf. Freihofer v Hearst Corp.*, 65 NY2d 135.)

Also, the fact that plaintiff urges that the claims arose after the termination of the contract only begs the question, for the issue is *whether* the (AFTRA) contract was breached by V&R, entitling plaintiff to declare its termination. Under the broad arbitration clause, the issue of the contract's "termination" was clearly within the arbitration clause's purview, and so was a matter for the arbitrators to decide (*Matter of Vann v Kreindler, Relkin & Goldberg*, 78 AD2d 255, 260, *affd* 54 NY2d 936).

Once the courts have determined that there is a reasonable relationship between the arbitration contract/clause and the subject matter of the dispute (as properly found here), the court's inquiry ends. Arbitration should be directed, and the question of whether it covers the subject dispute, as well as the merits of the dispute, are questions for the arbitrators to decide (*Nationwide Gen. Ins. Co. v Investors Ins. Co.*, 37 NY2d 91, 96).

*Welch v Mr. Christmas* (57 NY2d 143), cited by the dissent, is inapposite. There the Court of Appeals was faced with a simple action under the Civil Rights Law involving the unauthorized use of a commercial after the time limitation on plaintiff's consent had concededly expired. In addition, unlike the case at bar, there was no indication, at all, in that case of any arbitration agreement between the parties, and the Court of Appeals, therefore, did not deal with this issue.

It is true that some of the parties are not subject to the arbitration clause, but the need for bifurcated litigation is not a bar to enforcement of an arbitration agreement (*Dean Witter Reynolds v Byrd*, 470 US —, 105 S Ct 1238 [Mar. 4, 1985]). Indeed, the direction by Special Term to stay the action against the other parties pending resolution of the arbitration has been sanctioned, particularly where the claims against the other parties are derivative and secondary and there are similar, if not identical, issues (*see, Edwards v Bergner*, 22 AD2d 808, *supra*).

Finally, although the arbitration may not effect complete

relief because the arbitrators cannot award exemplary damages, this is not a reason for barring arbitration. Plaintiff, by becoming a signatory to the arbitration clause, chose that forum and the remedies available there, so he cannot be heard to complain that complete relief is not affordable (*see, Port Washington Union Free School Dist. v Port Washington Teachers Assn.,* 45 NY2d 411, 418). Concur—Murphy, P. J., Ross and Asch, JJ.; Kupferman and Milonas, JJ., dissent in a separate memorandum by Kupferman, J.

Kupferman, J. (dissenting). Were it not for the determination in *Welch v Mr. Christmas* (57 NY2d 143), I would agree to affirm.

The plaintiff here, an actor, performed in a television commercial. The defendants are the producer and those using the commercial to advertise their products. The plaintiff is a member of the American Federation of Television and Radio Artists (AFTRA), which union entered into a collective bargaining agreement with the producers in the entertainment industry. This agreement has a broad arbitration clause covering all disputes and controversies. The users of the commercials are admittedly not signatories to this agreement.

In order for the commercial to be used beyond the first 13-week "cycle", a holding fee had to be paid. There is a dispute as to the timeliness of the payment of the holding fee. If it was untimely, then the commercial could not further be used.

The plaintiff sued for, among other things, violation of his right of privacy, alleging use after the expiration of the right so to do. The defendants moved for an order staying the proceeding and for a direction that the plaintiff arbitrate.

In the *Welch* case (*supra*), the dissent in the Appellate Division (85 AD2d 74, 79), had specifically taken the position that the matter was a dispute as to a breach of contract and that, therefore, right of privacy under Civil Rights Law § 51 did not apply. This was directly rejected in the unanimous opinion of the Court of Appeals.

Applying the *Welch* rule to this matter, the defense that the contract arbitration provision would override the civil rights claim cannot be sustained. Moreover, in an arbitration, there cannot be exemplary damages. (*Garrity v Lyle Stuart, Inc.,* 40 NY2d 354.) The *Welch* case permitted punitive damages, and if there is a violation of the right of privacy, it could here apply.