[622 NYS2d 954]

Merrill Lynch, Pierce, Fenner & Smith, Inc., et al., Respondents, v Marlene B. McLeod, Appellant.

First Department, February 23, 1995

## APPEARANCES OF COUNSEL

*Seth E. Lipner* of counsel *(Deutsch & Lipner,* attorneys), for appellant.

*Lawrence E. Fenster* of counsel *(Francis S. Chlapowski* on the brief; *Orrick, Herrington & Sutcliffe,* attorneys), for respondents.

## OPINION OF THE COURT

WALLACH, J.

Respondent, a Florida domiciliary with limited investment experience, invested a total of $200,000 with petitioners at their Florida office, over the period 1986-1988. Five years later, asserting misrepresentation as to the value and suitability of her portfolio, respondent brought a claim against these brokers for compensatory and punitive damages, interest, costs and attorneys' fees by demanding arbitration, in accordance with her customer agreement. That agreement called for all disputes to be "submitted to arbitration conducted under" either the Rules of the New York Stock Exchange (NYSE) or the Code of the National Association of Securities Dealers. Through her Florida counsel, respondent filed her claim with NYSE by writing to that agency's office in New York City, requesting arbitration in Florida. NYSE assigned the claim for arbitration in Florida. Petitioners thereupon commenced this proceeding to stay the Florida arbitration. Respondent moved to dismiss the stay proceeding on grounds of inconvenience and lack of personal jurisdiction in New York. The IAS Court denied respondent's challenge to personal jurisdiction, and granted the petition for a partial stay of arbitration. Respondent appeals.

The question of obtaining jurisdiction over a nondomiciliary in a proceeding to stay arbitration has been the subject of considerable and seemingly inconsistent litigation in the IA Parts of Supreme Court, New York County. In personam jurisdiction was found in the case before us despite the fact that respondent's only contact with New York was her request for arbitration under the auspices of NYSE, whose headquarters happen to be located here, and her agreement that arbitrable controversies were to be "governed by the laws of the State of New York."

The fountainhead for future controversy over the issue of personal jurisdiction in such proceedings was the Second Circuit's 1977 decision in *Merrill Lynch, Pierce, Fenner &*

*Smith v Lecopulos* (553 F2d 842), which held that an agreement providing for resolution of disputes by arbitration in New York constitutes consent to personal jurisdiction in our courts. Aside from the fact that decisions of the Federal circuit court are not binding on State courts in cases involving nonFederal questions *(Marsich v Eastman Kodak Co.,* 244 App Div 295, 296, *affd* 269 NY 621), we believe *Lecopulos* was based on faulty analysis in one key respect, thus tainting the line of New York cases which have followed it on this point.

*Lecopulos* involved a Greek investor who dealt with Merrill Lynch exclusively through the latter's London office. When the client's commodity investments soured, Merrill Lynch sued in New York for the debit balance on the account, and obtained an order of attachment here. The client had the case removed to Federal court, at which point the broker moved to stay its own action pending the arbitration called for in the account agreement. The client then moved to dismiss for lack of personal jurisdiction. The Second Circuit rejected Lecopulos' dismissal motion, accepting Merrill Lynch's argument that "the agreement to resolve disputes by arbitration in New York constituted consent to personal jurisdiction in New York." (553 F2d, *supra,* at 844.) In reaching that decision, the court cited its earlier rulings in cases wherein the party objecting to jurisdiction had specifically consented to jurisdiction, or at least had consented to the mechanism by which jurisdiction would be chosen. For example, the court relied heavily on *Victory Transp. v Comisaría Gen. de Abasfecimientos y Transportes* (336 F2d 354, 363, *cert denied* 381 US 934), which held that "By agreeing to arbitrate in New York * * * the Comisaría General must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in New York." Indeed, the charter agreement at issue in *Victory Transp.* clearly provided for arbitration of disputes "at New York" (336 F2d, *supra,* at 356, n 2), in sharp contrast to the agreement in *Lecopulos,* which was silent on the location of arbitration.

The language in the *Lecopulos* agreement mirrors the case at bar in that arbitration was to be conducted under NYSE auspices, and the agreement and its enforcement were merely to be "governed by the laws of the State of New York." *Victory Transp.* was thus construing a choice-of-forum clause, whereas *Lecopulos* misconstrued such selection from a choice-of-law clause. The latter might suggest an appropriate legal framework for the arbitral process, but it does not alone

confer jurisdiction *(Burger King Corp. v Rudzewicz,* 471 US 462, 482; *Galgay v Bulletin Co.,* 504 F2d 1062, 1066).

Some minimal New York nexus is required in order to commence a special proceeding in our courts to stay arbitration (Siegel, NY Prac § 588, at 940 [2d ed]). In determining such a nexus, the focus must be on *respondent's* purposeful activity within this State, not petitioners' *(see, Haar v Armendaris Corp.,* 31 NY2d 1040, *revg on dissenting opn* 40 AD2d 769). Respondent never engaged in any business transactions in this State which would subject her to the long arm of our jurisdiction (CPLR 302 [a] [1]), nor did her use of the NYSE correspondence "facility" in New York *(Kidder, Peabody & Co. v Marvin,* 161 Misc 2d 12, 22) constitute a jurisdictional choice of forum. Rather, she exercised her option to arbitrate in Florida simply by filtering her request through an agency whose designated office for correspondence happened to be located in New York. That act was insufficient to establish a nexus for jurisdiction here, even combined with the choice of New York law.

In the last analysis, if Merrill Lynch, through its Florida brokerage office, had been so determined to force this Florida client to arbitrate claims in New York, it could easily have provided as much, explicitly, in the customer agreement. Thus, not only contractual principles but also fairness and due process require this proceeding to be dismissed on jurisdictional grounds.

To the extent that this decision disagrees with dictum in *Matter of Prudential Sec. (Mandt)* (205 AD2d 424) on the question of personal jurisdiction, we decline to follow that prior language. In light of our disposition on the jurisdictional issue, there is no need to address the remaining issues raised on this appeal.

The judgment of Supreme Court, New York County (Beverly S. Cohen, J.), entered May 10, 1994, which denied respondent's motion to dismiss this petition to stay arbitration, and granted the petition insofar as to impose a partial stay and to strike certain portions of respondent's claims, should be reversed, on the law, respondent's motion should be granted, the petition should be denied, and the parties directed to proceed to arbitration in Florida.

SULLIVAN, J. P., ROSS, RUBIN and WILLIAMS, JJ., concur.

Judgment, Supreme Court, New York County, entered May 10, 1994, which denied respondent's motion to dismiss the

petition to stay arbitration, and granted the petition insofar as to impose a partial stay and to strike certain portions of respondent's claims, reversed, on the law, respondent's motion granted, the petition denied, and the parties directed to proceed to arbitration in Florida.