[629 NYS2d 426]

MICHAEL KOOB, Respondent, v IDS FINANCIAL SERVICES, INC., et al., Appellants.

First Department, July 13, 1995

## APPEARANCES OF COUNSEL

*Bruce H. Gieseman* of counsel *(Grippo & Elden,* and *Robinson, St. John & Wayne,* attorneys), for appellants.

*Anthony Paduano* of counsel *(Jordan D. Becker* on the brief; *Smith Campbell & Paduano,* attorneys), for respondent.

## OPINION OF THE COURT

RUBIN, J.

This appeal involves an employment contract, made and performed in Minnesota, between parties that are domiciled in that State. The contract contains a clause restricting petitioner's endeavors upon separation from his employment, which was activated when petitioner departed to work for Prudential Securities, Inc., likewise in Minnesota. Because respondents are members of the National Association of Securities Dealers (NASD), petitioner submitted a statement of claim to that organization, in New York, demanding arbitration pursuant to the NASD Code of Arbitration Procedure. Petitioner has been granted a stay by the Supreme Court of the State of New York, which remains in effect, enjoining respondents from bringing any proceeding in the courts of any State to enforce the restrictive covenant contained in the employment agreement.

This case raises significant questions regarding the extent to which the courts of New York should attempt to supervise arbitration proceedings, conducted between parties domiciled in another jurisdiction and concerning events that occurred entirely outside this State. It is submitted to the Court for review of an order dated January 9, 1995, as amended by an order dated January 23, 1995, respectively imposing and continuing what is denominated a "TRO", preliminarily enjoining respondents from commencing any action against petitioner. Submitted as a supplemental record on appeal is an order dated April 3, 1995, "enjoining IDS from commencing or prosecuting any related actions or proceedings against Petitioner in any state court or arbitration forum other than the NASD". Although a provision directing arbitration is stricken from the subsequent order, the practical effect is indistin-

guishable from an order that permanently stays an action and directs the parties to arbitrate their dispute *(see,* CPLR 7503 [a]), except that it is imposed as a provisional remedy pursuant to CPLR 7502 (c) (added by L 1985, ch 253, § 1, eff Jan. 1, 1986).

The issue defined by the briefs is whether the parties to the proceeding have a sufficient connection with this State to warrant the exercise of personal jurisdiction by its courts. This appeal also raises questions concerning whether there is any procedural basis for petitioner's application to compel arbitration and, if not, whether the court possessed the equitable discretion to grant a provisional remedy.

Petitioner Michael Koob, a resident of Minnesota, worked as a financial planner for respondents at their offices in Roseville, Minnesota, from October 16, 1991 until November 23, 1994. He received compensation for his sale of IDS products from respondent IDS Life Insurance Company, a Minnesota corporation engaged in the business of issuing life and disability insurance policies and annuity contracts, and from respondent IDS Financial Services, Inc., a corporation registered in Delaware, engaged in the securities and investment business as a broker-dealer and investment advisory firm (collectively IDS).

Petitioner's employment with respondents was governed by a detailed agreement. Section IV (1) (g) provides that, for one year after its termination, he will not solicit, except with the permission of IDS, within his assigned territory, "a Client you contacted, dealt with or learned about while you represented IDS Life or an Affiliate or because of that representation." Section IV (3) provides: "(a) You agree that: (1) The violation of the provisions in this section will result in damage to IDS Life that cannot be determined exactly and for which IDS has no adequate remedy at law; and that (2) IDS Life has the specific right to enforce these provisions; and that (3) IDS Life is entitled to an injunction to keep you from violating the provisions or to enforce them." Significantly, it further provides: "(b) If a dispute involving this Agreement is submitted for arbitration under the Code of Arbitration Procedure of the National Association of Securities Dealers or otherwise, you agree that IDS Life is entitled to an injunction from a court of competent jurisdiction to keep you from violating these restrictions *while the arbitration is pending"* (emphasis added).

November 23, 1994 must have been a busy day in the life of

petitioner Koob. On that date, he terminated his relationship with respondents and began work for Prudential Securities, Inc. as a broker at its Bloomington, Minnesota, office. On the same date, he submitted a statement of claim to the NASD. And, on that date, he submitted an order to show cause to enjoin respondents from instituting "any action or proceeding in any state court or arbitration forum other than the NASD against Petitioner or concerning Petitioner arising out of his association or termination of association with IDS and his subsequent hiring by Prudential Securities Incorporated".

In support of his demand for relief before the NASD, Koob states, "IDS, upon information and belief, is about to commence an action in the state or federal courts asserting claims against Koob arising out of the termination of his association with IDS and his subsequent employment with Prudential. Koob seeks a declaration by the Panel that he is not liable to IDS in law or in equity in any respect as a result of the termination of his association with IDS, or regarding his subsequent employment with Prudential."

The verified petition sheds some light on the motivation underlying petitioner's application. In a statement which, on its face, is of doubtful veracity, he recites: "Petitioner has decided today *[sic]* to terminate his association with IDS and has become employed by Prudential, a competitor of IDS. Petitioner has been engaged in the solicitation of orders for securities transactions. IDS has a policy and practice of requiring some registered representatives affiliated with it to sign documents purporting to contain post-affiliation restrictive covenants." He further states, "Based upon IDS's prior practice, if not restrained, IDS likely will seek an order preventing Petitioner from continuing to work with his clients and preventing Petitioner from transacting business with any of Petitioner's clients who choose to transfer their accounts to Prudential."

It is appropriate to note that what Koob seeks from the NASD is nothing more than an advisory opinion. The sole basis for seeking arbitration is not anything that IDS, in the personae of respondents, has done to petitioner, but something which petitioner "upon information and belief" thinks might be done. What petitioner seeks from the arbitration panel is a ruling as to whether respondents would be entitled to proceed in court or whether they would be limited to the arbitral forum should they elect to take some action to enforce the restrictive covenant.

While the nature of the claim sought to be arbitrated and its lack of merit are not normally any concern of the court (CPLR 7501), the situation is altogether different when the petition is one for injunctive relief in the absence of any basis to compel arbitration (CPLR 7503 [a]). In these circumstances, the court is obliged to take cognizance of the end to which its equitable powers are being applied. Had the court, in this instance, undertaken such an inquiry, there is little doubt it would have been constrained to conclude that the end does not justify the means.

In deciding an application to compel arbitration pursuant to CPLR 7503 (a), the court is required to "first make a determination whether the parties have entered into a valid arbitration agreement *(O'Brien v Bache Halsey Stuart Shields,* 80 AD2d 846) and, if so, whether the issue sought to be submitted to arbitration falls within the scope of that agreement *(Matter of County of Rockland [Primiano Constr. Co.],* 51 NY2d 1, 7)" *(Schenkers Intl. Forwarders v Meyer,* 164 AD2d 541, 543, *lv denied* 78 NY2d 852). Though immaterial in this case, the court is empowered· to determine if the dispute sought to be submitted to arbitration is timely (CPLR 7503 [b]; 7502 [b]; *Matter of County of Rockland [Primiano Constr. Co.],* 51 NY2d 1, *supra).* Finally, and highly pertinent under the circumstances of this case, the court must determine if the subject of the petition sets forth an appropriate ground for judicial intervention under the provisions of CPLR article 75 *(Avon Prods. v Solow,* 150 AD2d 236, 238).

As a threshold procedural matter, CPLR 7503 (a), invoked as a basis for the petition, states, "A party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration." While the timeliness of an application to compel arbitration usually surfaces in the context of how late it can be filed *(e.g., Matter of Corbo v Les Chateau Assocs.,* 127 AD2d 657 [application made more than four years after underlying fraud should have been discovered]), it requires no discussion that a party who has filed a contemporaneous statement of claim cannot possibly be aggrieved by the failure of the named respondents to proceed to arbitration. This is especially so where the governing rules provide for subsequent service upon the named respondents by the Director of Arbitration (NASD Code of Arbitration Procedure ¶ 3725 [§ 25 (a)]). Also apparent from the structure of article 75 is that, in the absence of prolixity, a party to an arbitration agreement is not aggrieved until litigation of an issue within the opera-

tion of the arbitration provision is attempted. At such time, he may avail himself of the relief afforded by CPLR 7503 (a) by making application to compel arbitration, the grant of which operates "to stay a pending or subsequent action."

It is clear that petitioner meets neither statutory basis for relief. Even if he did, there is considerable doubt that the injunctive relief sought falls within the operation of the arbitration provision of his employment contract. Although the court's inquiry is generally at an end once it appears that the subject of a grievance is reasonably related to the subject matter of the underlying contract governed by a broad arbitration clause *(Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co.,* 37 NY2d 91, 96; *Brown v V&R Adv.,* 112 AD2d 856, 861, *affd* 67 NY2d 772), the employment agreement in question expressly reserves the right of respondents to seek injunctive relief to enforce the restrictive covenant. The stipulation, in the contract, that "IDS Life is entitled to an injunction from a court of competent jurisdiction to keep you from violating these restrictions while the arbitration is pending" removes the matter from the authority of the arbitrator.

As an alternative ground for an order enjoining any resort to the courts by respondents, petitioner invokes the provisional remedies section of the arbitration statute. CPLR 7502 (c) provides, insofar as pertinent: "The supreme court in the county in which an arbitration is pending, or, if not yet commenced, in a county specified in subdivision (a), may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief."

The immediate question that arises is whether this provision enlarges the statutory grounds for relief available to petitioner pursuant to CPLR 7503 (a) and (b). Clearly, it does not. Preliminary relief is only available with respect to an "arbitrable controversy". As noted in *Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. (supra,* at 95), "it is for the courts to make the initial determination as to whether the dispute is arbitrable". This implicates the same criteria as an application to stay or compel arbitration cited above—that the parties have agreed to submit their disputes to arbitration, that the particular dispute falls within the scope of the arbitration provision, that arbitration is timely sought and

that judicial intervention is authorized at the particular stage of the proceedings.

Because petitioner is not an aggrieved party within the contemplation of the statute and because injunctive relief is exempted from the scope of the subject arbitration provision, the injunction issued by Supreme Court in this matter has no foundation in law. But even if the application were not devoid of a statutory predicate, the issuance of a stay would still have to rest upon a sound equitable basis. It deserves emphasis that "the extraordinary remedies * * * of injunctive and declaratory relief * * * are available 'only where resort to ordinary actions or proceedings would not afford adequate relief.' " *(Gaynor v Rockefeller,* 15 NY2d 120, 132, quoting *Rockland Light & Power Co. v City of New York,* 289 NY 45, 51). In this case, petitioner seeks declaratory relief by way of arbitration and injunctive relief from the court. For purposes of injunctive relief, an arbitration is considered an action, and the application is subject to the provisions of CPLR articles 62 and 63 (CPLR 7502 [c]). It is therefore imperative that a grant of preliminary injunctive relief proceed from an evaluation of petitioner's circumstances in light of the customary equitable criteria (CPLR 6301; *Aetna Ins. Co. v Capasso,* 75 NY2d 860, 862; *Grant Co. v Srogi,* 52 NY2d 496, 517).

Neither in his Statement of Claim to the NASD nor in his verified petition does petitioner assert that any action has yet been taken by respondents to enforce the provisions of the restrictive covenant contained in his employment contract. The need for injunctive relief is therefore lacking. Even if, as the petition presumes, respondents had subsequently initiated legal action, petitioner would then have an immediate remedy at law pursuant to CPLR 7503 (a), obviating the necessity for preliminary relief.

In its memorandum decision, Supreme Court states only the bald conclusion that the injunction is justified upon the ground that " 'the award to which the applicant [may] be entitled may be rendered ineffectual without such provisional relief' " (quoting CPLR 7502 [c]. The court does not state what irreparable injury might befall petitioner if respondents were to institute any proceeding in court to enforce the terms of the restrictive covenant *(Matter of Hill v Reynolds,* 187 AD2d 299). Nor is there any attempt to assess petitioner's likelihood of success on the merits of his claim *(Gulf & W. Corp. v New York Times Co.,* 81 AD2d 772). Finally, in neglecting to balance the equities, the court ignores the practical effect of

enjoining respondents from seeking injunctive relief, pursuant to the express terms of the contract, in a State judicial forum. Although the injunction imposed upon respondents is termed preliminary, it remains in effect some six months later. During this period of time, petitioner has enjoyed precisely the relief which he seeks in the underlying action. As this Court noted in *Residential Bd. of Mgrs. v Alden* (178 AD2d 121, 122), "A preliminary injunction is a provisional remedy. Its function is not to determine the ultimate rights of the parties, but to maintain the status quo until there can be a full hearing on the merits *(Gambar Enters. v Kelly Servs.,* 69 AD2d 297, 306). By granting, preliminarily, the relief ultimately sought, Supreme Court has obviated the necessity for plaintiff to prosecute this action to completion."

With this background, consideration can be given to the propriety of entertaining an application for injunctive relief in a matter concerning parties whose significant contacts are exclusively with the State of Minnesota under a contract entered into and performed entirely in that State. The contract not only provides that it is governed by Minnesota law, but also recites that petitioner consents "to the jurisdiction of State of Minnesota courts for determining any controversy in connection with this agreement."

IDS Life Insurance Company is not licensed or registered to do business in New York. It has no office, bank accounts, or employees, nor does it own personal or real property within this State. IDS Financial Services, Inc., on the other hand, is registered and does conduct business in this State, but maintains its principal place of business in Minneapolis, Minnesota. Respondents are both members of the NASD. Neither is a member of the New York Stock Exchange. Respondents aver that Koob was never authorized to conduct business on their behalf in New York or with New York-based clients, and there is no indication in the record that he ever did.

It is the policy of the courts of this State to enforce contractual provisions for choice of law and selection of a forum for litigation *(Matter of Smith Barney, Harris Upham & Co. v Luckie,* 85 NY2d 193, 201, *petition for cert filed sub nom. Manhard v Merrill Lynch, Pierce, Fenner & Smith,* 63 USLW 3849 [May 19, 1995]). The parties in this case have provided that their employment agreement is governed by Minnesota law and have consented to the jurisdiction of its courts "for determining any controversy in connection with this agreement." This Court will not require a more explicit expression

of consent to the jurisdiction of the courts of a particular State, especially where the law of the designated forum is exclusively applicable to the controversy.

Judicial supervision of arbitration is merely ancillary to the arbitration proceeding. It should be as minimal as possible so as to advance "the strong public policy of encouraging, by judicial noninterference, an unfettered, voluntary arbitration system, where equity should be done" *(Matter of Niers-Folkes, Inc. [Drake Ins. Co.],* 75 AD2d 787, 788, *affd* 53 NY2d 1038). CPLR 7501 provides that a written agreement to submit a dispute to arbitration "confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award." CPLR 7502 provides a broad range of choices for setting the venue of a special proceeding in respect of arbitration, and CPLR 7503 includes provisions for notice and a mechanism to compel or stay arbitration.

While silent with regard to the basis for the exercise of jurisdiction, the inference to be drawn from the enforcement provision of CPLR 7501 is that the subject arbitration is to be conducted *in this State.* The fundamental question immediately presented is why New York should have any interest in the supervision of arbitration that is to be conducted elsewhere? It is readily apparent that this jurisdiction has no interest in entertaining litigation among Minnesota parties, arising out of a Minnesota contract, performed entirely in Minnesota and governed by Minnesota law. There is therefore no reason to entangle the courts of this State in the supervision of arbitration arising out of such a contract to be conducted by the National Association of Securities Dealers, presumably in Minnesota. (Pursuant to NASD Code of Arbitration Procedure ¶ 3726 [§ 26], the location of the initial arbitration hearing is to "be determined by the Director of Arbitration" and, thereafter, to be designated by the arbitrators selected by the parties.)

As this Court recently noted in *Merrill Lynch, Pierce, Fenner & Smith v McLeod* (208 AD2d 81, 82-83 [Wallach, J.]), choice of law and choice of forum are entirely separate matters. Merely because the law of a particular State (which is indisputably Minnesota under the terms of the subject agreement) is designated as controlling does not confer jurisdiction on its courts to entertain litigation, including the supervision of arbitration proceedings. We rejected the analysis of *Merrill Lynch, Pierce, Fenner & Smith v Lecopulos* (553 F2d 842), which failed to observe the distinction, noting that the cases

relied upon by the Second Circuit Court of Appeals specifically designated New York as the situs of the arbitration hearings, whereas the arbitration agreement in question was silent as to location *(supra).*

The situs of the arbitration hearings in this matter, as in *Lecopulos (supra),* is to be designated by the organization under whose auspices the proceedings are to be conducted, in this case the NASD. While the issue need not be decided in connection with this appeal, such a provision does not ineluctably confer unfettered discretion. But at least insofar as the supervision of arbitration by the courts is concerned, subjecting the resident of a foreign State who lacks significant contacts with New York to the jurisdiction of our courts offends " 'traditional notions of fair play and substantial justice' ", in the language of *International Shoe Co. v Washington* (326 US 310, 316). As we held in *McLeod (supra,* at 84), "Some minimal New York nexus is required in order to commence a special proceeding in our courts to stay arbitration." A merely tenuous connection with this forum is not sufficient to subject nonresidents to the jurisdiction of our courts. It is not enough that a notice of intention to arbitrate was filed with an organization in New York *(Merrill Lynch & Co. v Mathes,* 212 AD2d 456), nor that the parent company of IDS Life Insurance Company happens to be a New York domiciliary *(Landoil Resources Corp. v Alexander & Alexander Servs.,* 77 NY2d 28, 34-35 [underwriting of policies in New York insufficient to sustain jurisdiction]; *National Union Fire Ins. Co. v Jordache Enters.,* 205 AD2d 341, 342-343 [convenience of forum demonstrated by substantial nexus of the case to this jurisdiction]).

This case, rather more dramatically than *McLeod,* illustrates that officious intermeddling in the affairs of another forum is to be discouraged. Without a cognizable claim and with only the most tenuous connection with this jurisdiction, petitioner has exploited the good offices of our courts to preclude respondents from seeking relief which they are entitled to pursue, as a matter of contract, in the courts of Minnesota *(see, Amarant v D'Antonio,* 197 AD2d 432). Involvement in affairs properly within the province of the courts of another State is objectionable on the ground of comity. Moreover, as this Court observed in *Avon Prods. v Solow (supra,* at 238), the minimal supervisory function assigned to the courts under CPLR article 75 is intended to "preclude[ ] the parties to an arbitration agreement from simultaneously pursuing

their claims before the courts and thus playing one forum off against the other." The same policy considerations preclude abuse of the arbitral process to frustrate injunctive enforcement of contract rights by playing the courts of one jurisdiction off against those of another.

Although petitioner argued, in his affidavit before Supreme Court, that this matter is governed by the Federal Arbitration Act (9 USC §§ 1-16), he does not assert that position upon appeal. However, it is clear from the Court of Appeals recent decision in *Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith* (85 NY2d 173, *supra)* that the outcome would be no different under that statute.

This Court is unable to find any justification for entertaining petitioner's application in this matter. It is contrary to statute, antagonistic to the equitable principles underlying the relief granted, violative of the intent of the contract between the parties and inimicable to criteria supporting the exercise of in personam jurisdiction. Were it not contrary to law, it would constitute an improvident exercise of discretion.

Accordingly, the order of the Supreme Court, New York County (Diane A. Lebedeff, J.), entered on or about January 9, 1995, as modified by its order of January 23, 1995, which denied respondents' cross motions seeking to dismiss the complaint as to respondent IDS Financial Services on forum non conveniens grounds, and as to respondent IDS Life Insurance Company on the ground of lack of personal jurisdiction, and to vacate the preliminary injunction prohibiting respondents from commencing suit in any forum except arbitration conducted under the auspices of the National Association of Securities Dealers, should be reversed, on the law, the cross motions granted, the injunction vacated, and the complaint dismissed, with costs. The Clerk is directed to enter judgment in favor of respondents-appellants dismissing the complaint.

ROSENBERGER, J. P., and WALLACH, J., concur with RUBIN, J.; MAZZARELLI, J., concurs in result only.

Order, Supreme Court, New York County, entered on or about January 9, 1995, as modified by its order of January 23, 1995, reversed, on the law, with costs, the cross motions granted, the injunction vacated and the complaint dismissed.