[671 NYS2d 905]

Bank of Tokyo-Mitsubishi, Ltd., New York Branch, et al., Respondents, v Kvaerner a.s. et al., Appellants.

First Department, April 7, 1998

1

2

## APPEARANCES OF COUNSEL

*Thomas J. Hall* of counsel, New York City (*Brian A. Miller* and *Christine P. Searl* on the brief; *Chadbourne & Parke, L. L. P.,* attorneys), for respondents.

*Neil E. McDonell* of counsel, New York City (*Kenneth A. Becker* on the brief; *Dorsey & Whitney, L. L. P.,* attorneys), for Kvaerner a.s., appellant.

*Charles E. Dorkey, III,* of counsel, New York City (*Edward J. Henderson, Linda M. Baldwin* and *Piero A. Tozzi* on the brief; *Haythe & Curley,* attorneys), for J.A. Jones, Inc., appellant.

### OPINION OF THE COURT

RUBIN, J.

This is an action brought by plaintiff Bank of Tokyo-Mitsubishi, Ltd. as assignee of a construction contract to build an electric cogeneration facility in Fayetteville, North Carolina. The owner of the facility is BCH Energy, L.P., a Delaware limited partnership headquartered in Texas. The contractor, Metric/Kvaerner Fayetteville, is a joint venture between the respective subsidiaries of defendant J.A. Jones, Inc., also a Delaware corporation with its principal place of business in North Carolina, and defendant Kvaerner a.s., a Norwegian corporation that conducts no business in the United States. Plaintiff bank is the agent for a consortium of banks doing business in New York.

██ ██ The complaint seeks recovery of "damages resulting from the Contractor's failure to perform, including the costs of correcting the defects and deficiencies arising from the Contractor's breach of contract". As the basis for the action, plaintiff relies on two instruments executed by the respective defendants guarantying the performance of the joint venture as contractor under the construction contract. Because the action has only a tenuous connection with this State and because, in any event, the central issue in the case is the subject of arbitration currently pending in North Carolina, this Court concludes that the parties must seek any relief attendant to this dispute before the courts of North Carolina.

Plaintiff Bank of Tokyo-Mitsubishi, Ltd. together with a consortium of international banks (consisting of Barclays Bank PLC, Bayerische Vereinsbank AG., Credit Suisse First Boston, Dai-Ichi Kangyo Bank, Ltd. and The Fuji Bank, Ltd.) provided financing of approximately $80 million for a construction project to build an electric power plant designed to produce energy from waste. It is apparent from the recitations in the subject guaranties dated November 16, 1993 that the owner, BCH Energy, L.P., entered into a "Credit and Reimbursement Agreement" with the various banks (which is not contained in the record on appeal). The complaint, however, does not allege that

the loan is in default, and the guaranties executed by defendants do not extend to the financing agreement but rather to the construction contract dated November 15, 1993. This action is predicated on the joint venturers' default on their obligations under the construction contract. As the complaint recites, "The Contractor has failed to perform as required and, accordingly, the defendants are liable to the Banks under the Guaranties."

BCH Energy, L.P. took possession of the cogenerating facility in the summer of 1996, but never issued a certificate of substantial completion in accordance with the construction contract. In September, BCH issued notice that the joint venturers were in default under the agreement. In October, the joint venture commenced an arbitration proceeding in which it seeks a declaration that the project is substantially complete, payment of sums due under the contract and delay damages. In early December, plaintiff bank served notice of default under the guaranties and commenced this action by filing of the summons and complaint on or about January 14, 1997.

In instituting this action in the courts of this State, plaintiff bank relies on several provisions contained in the guaranties: that plaintiff may institute a "separate action" under the instruments, that the guaranties are to be governed by the laws of this State and that the guarantors "submit[ ] to the jurisdiction of any Federal court sitting in the State of New York", fully waiving "the defense of an inconvenient forum".

In opposing litigation of this matter, both defendants contend that the controversy will be determined by the outcome of the arbitration proceeding pending in North Carolina, commenced by the joint venture pursuant to the broad arbitration provision of the construction contract. Both defendants moved to compel arbitration of this dispute or, in the alternative, to stay the action pending resolution of the arbitration proceedings. In addition, defendant J.A. Jones, Inc. argues that the courts of this State lack personal jurisdiction over it because Jones is not doing business in New York. Therefore, Jones moved to dismiss the action on that basis. Defendant Kvaerner additionally moved for dismissal of the action on the ground of forum non conveniens but has abandoned this argument on appeal. Supreme Court denied both motions in their entirety.

Plaintiff argues essentially that the rights of the financing banks under the guaranties are distinct from their rights pursuant to the construction contract, that the arbitration provi-

sion of the contract is inapplicable to the guaranties and that, in any event, the consortium of banks it represents are not parties to the arbitration. With respect to the jurisdictional issue, plaintiff bank relies on the theory that, by mailing the guaranty to New York, Jones was conducting business in this State and is thereby subject to its long-arm jurisdiction (CPLR 302 [a] [1]).

One obvious question raised by the forum designation provision is why defendants, having consented to suit in Federal court, find themselves litigants before a State court. The apparent answer is that, by virtue of the appearance in this action by an alien corporation (defendant Kvaerner a.s.), plaintiff bank is unable to establish the necessary diversity of citizenship prerequisite to Federal jurisdiction (*see, e.g., Marathon Oil Co. v Ruhrgas, A.G.*, 115 F3d 315, 319 [5th Cir 1997], *cert denied* — US —, 118 S Ct 413 [1997], *reh en banc granted* 129 F3d 746; *Attorneys Trust v Videotape Computer Prods.*, 93 F3d 593, 595 [9th Cir 1996]).

Another question that naturally arises is whether the provision that New York law shall govern the interpretation of the guaranties and the choice of New York as the situs of any related action are sufficient to confer jurisdiction over defendants. As this Court has noted, choice of law and choice of forum are altogether separate matters (*Merrill Lynch, Pierce, Fenner & Smith v McLeod* (208 AD2d 81, 83-84 [Wallach, J.]). Furthermore, the choice of forum provision does not comply with General Obligations Law § 5-1402 (1) because defendants have not consented "to submit to the jurisdiction of the courts of this state" but have submitted only to the jurisdiction of the courts of the United States sitting in New York. For the same reason, this Court regards defendants' waiver of objection to the convenience of this forum as coextensive with, and ancillary to, the forum selection clause that precedes it. Therefore, the waiver extends only to litigation conducted in the Federal courts and has no application to a State action.

With respect to the issue of personal jurisdiction over defendant Jones, this Court has consistently held that "New York may not extend long-arm jurisdiction over a non-domiciliary who was never physically present in New York, and who never agreed to provide any goods or services here, other than a promise to a New York corporation that he would make good if a corporation of another state defaulted on its debt" (*First Natl. Bank & Trust Co. v Wilson*, 171 AD2d 616, 618). Specifically, the rule established in this Department is that the mere

furnishing of a guaranty by a nondomiciliary on behalf of a foreign corporation does not serve to confer in personam jurisdiction upon our courts (*Waldorf Assocs. v Neville*, 141 Misc 2d 150, 154, *affd for reasons stated* 155 AD2d 283; *contra, Rielly Co. v Lisa B. Inc.*, 181 AD2d 269 [3d Dept]; *Fashion Tanning Co. v Shutzer Indus.*, 108 AD2d 485 [3d Dept]). While this principle would furnish a sufficient basis for dismissal were this action brought to recover damages from the guarantors of a note payable in this State, it is all the more appropriate where, as here, suit is brought against the guarantors to recover damages arising out of the failure to *perform* a contract, which performance is to be rendered in North Carolina (*Waldorf Assocs. v Neville, supra*, at 154). Nor has plaintiff demonstrated that a subsidiary of defendant Jones, concededly doing business in this State, lacks an independent corporate existence so as to subject its parent to the exercise of jurisdiction (*Delagi v Volkswagenwerk AG.*, 29 NY2d 426; *see also, Landoil Resources Corp. v Alexander & Alexander Servs.*, 77 NY2d 28, 34; *Volkswagenwerk AG. v Beech Aircraft Corp.*, 751 F2d 117 [2d Cir 1984]).

■ The significance of the nature of the guaranties upon which plaintiff sues cannot be overstated. The viability of plaintiff's case rests on its contention that the guaranties give it a right of action entirely separate from the contract. To this end, plaintiff places considerable reliance on this Court's decision in *National Union Fire Ins. Co. v Williams* (223 AD2d 395).

Ordinarily, a guaranty, even if contemporaneously executed, is considered a distinct obligation. " 'A guarantee is an agreement to pay a debt owed by another which creates a secondary liability and thus is collateral to the contractual obligation' " (*Brewster Tr. Mix Corp. v McLean*, 169 AD2d 1036, 1037, quoting *Shire Realty Corp. v Schorr*, 55 AD2d 356, 359-360). Therefore, the guaranty is not read together with the contract it indemnifies, "unless the history and subject matter shows them to be unified" (*Ripley v International Rys.*, 8 NY2d 430, 438). In such case, "the primary standard is the intent manifested, viewed in the surrounding circumstances" (*Rudman v Cowles Communications*, 30 NY2d 1, 13; *National Union Fire Ins. Co. v Williams, supra*, at 396). "The nature of the obligation depends upon the parties' intention, and where that intention 'may be gathered from the four corners of the instrument, interpretation of the contract is a question of law' " (*Brewster Tr. Mix Corp. v McLean, supra*, at 1037, quoting *General Phoenix Corp. v Cabot*, 300 NY 87, 92).

A fair interpretation of the obligation undertaken by defendants is that they guaranteed performance of the construction contract by their subsidiaries and, in this context, *National Union Fire Ins. Co. v Williams (supra)* is inapposite. That case involved the usual financing arrangement in which payment of a note is secured by a guaranty, and the terms of the guaranty are construed independently of the transaction financed by the loan (a bond securing investments in a limited partnership). Indeed, since the note is alienable, the guaranty runs to any holder in due course, not merely to the entity that procured the financing (*supra*, at 396). Therefore, we held that a choice of forum provision in the guaranty was not affected by an inconsistent forum designation in the indemnification agreement.

Both because of the nature of the right advanced by plaintiff herein and because of reciprocal language contained in the contract and the guaranties, it is clear that the instruments are intended to be read together with the construction contract, notwithstanding language to the contrary contained in the guaranties. With respect to a guaranty of performance of a contract, "It is well settled that a surety bond attaches to the principal contract and must be construed in conjunction with it" (*Carrols Equities Corp. v Villnave*, 57 AD2d 1044, 1045 [citing *Madawick Contr. Co. v Travelers Ins. Co.*, 307 NY 111], *lv denied* 42 NY2d 810; *Hall & Co. v Continental Cas. Co.*, 34 AD2d 1028, *affd* 30 NY2d 517). As a matter of contract construction, plaintiff's right to demand performance of the contract and to pursue recovery of consequential damages for incomplete performance—whether examined from the perspective of the guaranties or the underlying contract—is derived from its status as assignee of the rights of the owner, BCH Energy, L.P., under the contract. The guaranties recite that "concurrently with the execution and delivery of this Guaranty, Owner is assigning all of Owner's right, title and interest in, to and under the Agreement [the Construction Contract] to Agent". The contract contains the analogous recitation that the joint venture, as contractor, "acknowledges and consents to the Assignment pursuant to which Borrower [BCH Energy, L.P.] is collaterally assigning its right, title and interest" therein.

Defendants' obligations as guarantors arise upon the default of the joint venture, as principal, under the construction contract (*General Phoenix Corp. v Cabot, supra*, at 92). Having brought suit as assignee of the owner's rights, plaintiff's claim is subject to any defense that the obligor (the joint venture)

could have asserted against the assignor (Calamari & Perillo, Contracts § 269, at 419-420). The common-law rule is reflected in the guaranties, which provide that "to the extent Guarantor's obligations hereunder relate to obligations of Contractor which require performance other than the payment of money, Owner or Agent may proceed against Guarantor to effect specific performance thereof (to the extent such relief is available) or for payment of damages * * * resulting from Contractor's nonperformance only after written notice * * * Upon receipt of notice of default, *Guarantor shall have the same rights and remedies of Contractor under the Agreement*" (emphasis added). Thus, plaintiff's action is subject to the defense interposed by the joint venture that it fully performed all its obligations under the construction contract. Arguably, though not essential to the disposition of this appeal, the guarantors may also avail themselves of the arbitration provision contained in the underlying contract (*see, Madawick Contr. Co. v Travelers Ins. Co., supra*, at 118).

To be sure, the language of assignment is contradicted by the statement that the guarantors' obligations under the guaranties are "independent of the obligations of the Contractor" and that the agent may enforce those obligations "independently of any other right or remedy that Owner and Agent may at any time hold with respect to Guaranteed Obligations or any security or other guaranty therefor". Plaintiff therefore argues that the Court is required by rules of construction to give this provision effect in order to avoid rendering it nugatory (citing *Muzak Corp. v Hotel Taft Corp.*, 1 NY2d 42, 46; *Ruttenberg v Davidge Data Sys. Corp.*, 215 AD2d 191, 196). However, the clause relied upon by plaintiff is one of merely general application and, pursuant to a countervailing rule of contract construction, if there is an inconsistency between a general provision and a specific provision of a contract, the specific provision controls (*Muzak Corp. v Hotel Taft Corp., supra*, at 46, citing 1 Restatement, Contracts § 236 [a]). By contrast, the provision relied upon by defendants specifically accords the guarantors the same rights and remedies as the contractor where, as here, the obligation sought to be enforced is a breach of performance of the construction contract.

The consequences to plaintiff of bringing suit upon the contract are twofold. First, the issue sought to be litigated in this action is exactly the issue subject to arbitration in North Carolina between the owner and the joint venture—whether or not the project has been substantially completed. As the li-

ability of a guarantor attaches upon the contractor's default, resolution of this issue by the arbitrators will be conclusive on the question of defendants' liability under the guaranties. In this connection, it is the strong public policy of this State to favor the resolution of disputes in arbitration as a means of conserving scarce judicial resources (*Rio Algom v Sammi Steel Co.*, 168 AD2d 250, *lv denied* 78 NY2d 853). Second, the rights advanced in this action are personal to the parties to the arbitration. Plaintiff brings this action as assignee of the owner. Defendants are guarantors of the entities comprising the joint venture and assert a defense personal to the joint venture. The practical effect is that while the parties are nominally different, the rights they seek to litigate are indistinguishable from those of the parties to the ongoing arbitration. Plaintiff is technically correct in its contention that the consortium of banks that it represents are not parties to the arbitration. However, the asserted default by the joint venture in performance of the contract is the basis of that dispute. The same breach is asserted directly by the owner in the arbitral forum and indirectly by plaintiff herein, as assignee of the owner and as agent for the banks. Furthermore, as a matter of New York law, upon the assignment of its rights under the construction contract the owner's claim arising thereunder passed to plaintiff (*General Motors Acceptance Corp. v Kalkstein*, 101 AD2d 102, 106, *appeal dismissed* 63 NY2d 676).

In the final analysis, disposition of this appeal is governed by very practical considerations. Given the pendency of arbitration in North Carolina, the identity of the central issue, the derivative nature of the rights asserted and the identity of interest of the respective parties to the action and to the arbitration proceeding, only three possible alternatives are available to the Court (assuming jurisdiction over the parties and the propriety of the resulting order): (1) stay the arbitration, (2) permit both this action and the arbitration to proceed and (3) stay the action. Plaintiff does not contend that the pending arbitration is improper and has not moved for a stay of arbitration. In addition, this Court has a strong policy against judicial interference in the arbitration proceedings of another State (*Koob v IDS Fin. Servs.*, 213 AD2d 26, 34-36). Likewise, sound considerations of comity—in particular the possibility of conflicting rulings on identical issues—prohibit duplicative litigation, especially where the potential for conflict exists between a court and an arbitral forum (*Avon Prods. v Solow*, 150 AD2d 236, 238; *Koob v IDS Fin. Servs.*, *supra*, at 35-36; *see*

*also, Hirschfeld Prods. v Mirvish*, 218 AD2d 567, 568, *affd* 88 NY2d 1054). Therefore, the only viable option is to stay this action pending resolution by the arbitration panel of the issue of default in performance of the construction contract.

Accordingly, the order of the Supreme Court, New York County (Lewis Friedman, J.), entered on or about June 13, 1997, to the extent that it denied so much of defendant J.A. Jones, Inc.'s motion to dismiss the action for lack of personal jurisdiction, should be reversed, on the law, without costs, that part of the motion granted, and the action dismissed as against said defendant. The Clerk is directed to enter judgment in favor of J.A. Jones, Inc. dismissing the complaint as against it. Said order, to the extent that it denied the motion of defendant Kvaerner a.s. to compel arbitration or, in the alternative, to stay this action, should be reversed, to the extent appealed from as limited by the briefs, on the law and the facts and in the exercise of discretion, without costs, and the motion granted to the extent of staying this action pending resolution of the arbitration between BCH Energy, L.P. and Metric/Kvaerner Fayetteville, without prejudice to further application should the arbitration proceeding be unduly delayed.

ELLERIN, J. (concurring in result as to defendant Kvaerner a.s.'s motion). Contrary to the view expressed in Justice Rubin's opinion, I believe that the guaranties here in issue do provide plaintiff with a separate and independent right of action in accordance with our decision in *National Union Fire Ins. Co. v Williams* (223 AD2d 395) and do not incorporate the arbitration provision contained in the underlying construction agreement. However, in light of the chronological history of this case and section 3 (b) of the guaranty which provides that "in no event shall Guarantor be liable under this Guaranty * * * to an extent greater than Contractor under the Agreement", I believe that the interests of judicial economy and considerations of comity would best be served by joining in the decision to stay this action pending resolution of the arbitration between BCH Energy, L.P. and Metric/Kvaerner Fayetteville.

TOM, J., concurs with RUBIN, J.; MILONAS, J. P., and ELLERIN, J., concur in the result as to defendant Kvaerner a.s.'s motion in a separate opinion by ELLERIN, J.

Order, Supreme Court, New York County, entered on or about June 13, 1997, to the extent that is denied so much of defendant J.A. Jones, Inc.'s motion to dismiss the action for

lack of personal jurisdiction, reversed, on the law, that part of the motion granted, and the action dismissed as against said defendant, and said order, to the extent that it denied the motion of defendant Kvaerner a.s. to compel arbitration or, in the alternative, to stay this action, reversed, to the extent appealed from as limited by the briefs, on the law and the facts, and in the exercise of discretion, and the motion granted to the extent of staying this action pending resolution of the arbitration between BCH Energy, L.P. and Metric/Kvaerner Fayetteville, without prejudice to further application should the arbitration proceeding be unduly delayed, all without costs.