68 F.3d 554
 64 USLW 2235, Fed. Sec. L. Rep. P 98,920
 IN re SALOMON INC. SHAREHOLDERS' DERIVATIVE LITIGATION 91
CIV. 5500 (RRP): all actions.
Morton WEINER, Dr. Henry Housman, Laurence Housman, The
Hallisey and Johnson Money Purchase Pension Trust, Norman
Salsits, David Shaev, Chaim Mandelbaum, Three Bridges
Investment Group, Leatrice Seinfeld, Dorothy L. Kas, Alfred
Cardani, Ruby Resnik, Gregg Copenhagen, IRA DTD 9/22/89,
Thomas Lacosta, Murray Elias, Kenneth Steiner, and J.
Pennock Graham, Derivative Plaintiffs-Appellees,
v.
John H. GUTFREUND, Thomas W. Strauss, and John W.
Meriwether, Defendants-Appellants.
 No. 661, Docket 95-7645.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 6, 1995.
Decided Oct. 13, 1995.
 
 Greg A. Danilow, Weil, Gotshal & Manges, New York City (Curt P. Beck, of counsel), for defendant-appellant Thomas W. Strauss.
 Philip K. Howard, Howard, Darby & Levin, New York City (Linda C. Goldstein, of counsel), for defendant-appellant John H. Gutfreund.
 Charles E. Davidow, Wilmer, Cutler & Pickering, Washington, DC (Jeffrey E. McFadden, of counsel), for defendant-appellant John W. Meriwether.
 Patricia M. Hynes, Milberg Weiss Bershad Hynes & Lerach, New York City (Melvyn I. Weiss, Steven G. Schulman, Joshua H. Vinik, of counsel), for derivative plaintiffs-appellees.
 Scott W. Fisher, Garwin, Bronzaft, Gerstein & Fisher, New York City (Bertram Bronzaft, Jerald Stein, of counsel), for derivative plaintiffs-appellees.
 Before: WINTER, ALTIMARI, and McLAUGHLIN, Circuit Judges.
 McLAUGHLIN, Circuit Judge:
 
 
 1
 Shareholders in Salomon Inc. ("Salomon"), the corporate parent of Salomon Brothers Inc. ("Salomon Brothers"), brought a derivative suit in the United States District Court for the Southern District of New York (Robert P. Patterson, Jr., Judge ). They alleged securities and common law claims on behalf of Salomon and Salomon Brothers, all stemming from the Treasury Bill auction scandal that rocked Wall Street a few years ago.
 
 
 2
 The defendants, ex-Salomon Brothers officials, had signed agreements with Salomon Brothers providing for arbitration of any disputes arising out of their employment. They therefore moved to compel arbitration under the Federal Arbitration Act (the "FAA"), 9 U.S.C. Sec. 1 et seq. Judge Patterson granted the motion and referred the matter to the New York Stock Exchange ("NYSE"), the arbitral forum designated in the arbitration agreements. The NYSE declined to arbitrate the dispute, and the defendants went back to the district court, seeking the appointment of substitute arbitrators under Sec. 5 of the FAA. Judge Patterson denied the motion, and set the controversy down for trial in October, 1995.
 
 
 3
 The defendants now appeal, arguing that under First Options, Inc. v. Kaplan, --- U.S. ----, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the question of arbitrability is to be decided by the court, not the arbitrator, unless the arbitration clause clearly and unmistakably relegates that question to the arbitrator. They maintain that the arbitration clauses at issue here do not measure up to the clear and unmistakable test of First Options and, thus, Judge Patterson had the final say on the arbitrability question. Under the parties' arbitration agreements, however, this dispute could be arbitrated, if at all, only by the NYSE. Accordingly, we affirm the decision below to proceed to trial.
 
 I.
 
 4
 In 1991, certain brokers at Salomon Brothers made unauthorized bids during a Treasury Bill auction. This enabled Salomon Brothers to obtain a near monopoly on the T-Bills sold in that auction. Afterwards, Salomon Brothers' General Counsel learned of the chicanery and notified John Gutfreund, at that time the CEO and Chairman of the Board of Salomon Brothers, as well as the President, CEO, and Chairman of the Board of Salomon. He also notified Thomas Strauss, who was both the President of Salomon Brothers and the Vice Chairman of the Board of Salomon, and John Meriwether, who was a Managing Director and the Vice Chairman of the Board of Salomon Brothers and was also the supervisor of the broker who orchestrated the bidding scheme.
 
 
 5
 Gutfreund, Strauss, and Meriwether did nothing. Federal authorities, however, discovered the bid-rigging, and Salomon Brothers and others have subsequently paid millions of dollars in penalties imposed by the SEC and the Justice Department.
 
 
 6
 In 1991, several shareholders in Salomon Brothers' corporate parent, Salomon, brought a derivative suit against Gutfreund, Strauss, Meriwether (collectively, the "defendants"), and others, alleging several securities and common law claims. The suit was just one of many federal suits stemming from the auction scandal, all of which were assigned to Judge Patterson.
 
 
 7
 The derivative suit crawled along. In 1994, the defendants belatedly remembered that each of them had signed an agreement to arbitrate (under the Constitution and rules of the NYSE) any dispute arising out of their employment by Salomon Brothers. Accordingly, they moved to stay the three-year old derivative suit and to compel arbitration before the NYSE. Judge Patterson granted the motion.
 
 
 8
 Before the NYSE, the plaintiffs vigorously contended that the matter was not arbitrable and that the NYSE should decline to arbitrate it. Invoking the NYSE's discretion to "decline in any case to permit the use of [its] arbitration facilities," NYSE Const. Art. XI, Sec. 3, the Secretary of the NYSE declined to arbitrate the dispute.
 
 
 9
 The defendants appealed the Secretary's decision to the NYSE Board. The Board affirmed in a thorough opinion. It advanced several reasons justifying its decision not to arbitrate the matter, including that:
 
 
 10
 . under its decision in Diana v. Merrill Lynch, shareholder controversies were " 'not appropriately within the mandatory provisions' " of its Constitution;
 
 
 11
 . "jurisdiction must be based on the consent of the parties to arbitrate," and "neither the shareholders who initiated th[e] derivative action nor Salomon ... have consented to arbitration";
 
 
 12
 . shareholders' derivative litigation, which is governed by Fed.R.Civ.P. 23.1, is foreign to the procedures and mechanisms employed in NYSE arbitration.
 
 
 13
 The matter returned to Judge Patterson. The defendants moved for an order compelling arbitration, staying trial pending arbitration, and appointing substitute arbitrators under Sec. 5 of the FAA. Judge Patterson denied the motion from the bench:
 
 
 14
 The [NYSE] has determined not to take this matter and, accordingly, the agreement [to arbitrate] has been carried out by the members, in terms of what they had to do pursuant to their agreement. Since the [NYSE] has determined not to accept jurisdiction, this Court is going to proceed to trial....
 
 
 15
 The defendants then requested that the trial be delayed. Judge Patterson rejected their request:
 
 
 16
 I am not going to put this case off. This case has been pending over three years now. You [the defendants] are just putting off the awful day.
 
 
 17
 .... I can see what is going on. And I don't believe that plaintiffs are entitled, members of the class are entitled to have the matter put off. They are entitled to have prompt justice.
 
 
 18
 He set a trial date of October 10, 1995. Thereafter, he issued an order formally denying both the defendants' motion to compel arbitration, and a motion to stay the trial pending appeal.
 
 
 19
 Pursuant to Sec. 16 of the FAA, the defendants appealed, and promptly moved for a stay pending appeal and for an expedited appeal. This Court denied the stay without prejudice, and ordered the appeal expedited. The defendants then asked Judge Patterson once again to stay the trial. He denied the motion. Finally, at oral argument in this Court, the defendants renewed their motion for a stay of the trial pending our decision. We denied that motion from the bench.
 
 II.
 
 20
 On appeal, the parties focus almost exclusively on the Supreme Court's recent decision in First Options. The defendants contend that Judge Patterson, and not the NYSE, had to determine whether this dispute was arbitrable. See --- U.S. at ---- - ----, 115 S.Ct. at 1924-26. They construe his initial decision to refer the matter to the NYSE as a finding that the dispute was indeed arbitrable. Having once so found, they argue, Judge Patterson had no choice but to name substitute arbitrators under Sec. 5 of the FAA when the NYSE proved unwilling or unable to perform.
 
 
 21
 The plaintiffs, on the other hand, argue that Judge Patterson complied with First Options because the arbitration agreements at issue clearly and unmistakably assigned to the NYSE the power to determine arbitrability. See First Options, --- U.S. at ----, 115 S.Ct. at 1924. Alternatively, they argue that the defendants waived any right to have Judge Patterson decide the arbitrability question by convincing him to refer the matter to the NYSE in the first place, and by not renewing the arbitrability issue when the matter returned to him. Underlying their arguments is a belief that shareholder derivative suits are not fit for arbitration.
 
 
 22
 We need not reach these issues, however, because, under the arbitration agreements, all disputes were to be arbitrated by the NYSE and only the NYSE, "in accordance with the [NYSE] Constitution and rules." The NYSE Constitution clearly permits the NYSE to refuse the use of its facilities for the arbitration of any particular dispute. NYSE Const. Art. XI, Sec. 3. When the NYSE so refuses, there is no further promise to arbitrate in another forum.
 
 
 23
 We review de novo a district court's denial of a motion to stay an action pending arbitration. See Haviland v. Goldman, Sachs & Co., 947 F.2d 601, 604 (2d Cir.1991), cert. denied, 504 U.S. 930, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992). By now, it is axiomatic that "federal policy strongly favors arbitration as an alternative dispute resolution process." David L. Threlkeld & Co. v. Metallgesellschaft Ltd., 923 F.2d 245, 248 (2d Cir.), cert. dismissed, 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991). Thus, "[w]hile it is still the rule that parties may not be compelled to submit a commercial dispute to arbitration unless they have contracted to do so, federal arbitration policy requires that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' " Id. (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983)) (citations omitted).
 
 
 24
 The question we decide, however, is not whether shareholder derivative suits are arbitrable, but where this dispute--whatever its nature--may be arbitrated under the agreements. Although the federal policy favoring arbitration obliges us to resolve any doubts in favor of arbitration, we cannot compel a party to arbitrate a dispute before someone other than the NYSE when that party had agreed to arbitrate disputes only before the NYSE and the NYSE, in turn, exercising its discretion under its Constitution, has refused the use of its facilities to arbitrate the dispute in question. See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) (the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms"). We look, then, to the text of the arbitration agreements themselves.
 
 
 25
 Strauss had signed an employment agreement with Salomon Brothers under which
 
 
 26
 any controversy between [Strauss] and any member or member organization arising out of [Strauss's] employment by and with such member or member organization shall be settled by arbitration at the instance of any such party in accordance with the Constitution and rules then obtaining of the [NYSE].
 
 Meriwether signed a similar agreement:
 
 27
 any controversy between [Meriwether] and any member or member organization or affiliate or subsidiary thereof arising out of [Meriwether's] employment or the termination of [Meriwether's] employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and rules then obtaining of the [NYSE].
 
 
 28
 Gutfreund apparently signed an arbitration agreement forty years ago, but no one can find it. In any event, Salomon Brothers, as a member of the NYSE, and Gutfreund, as an allied member of the NYSE by virtue of his Salomon Brothers employment, had agreed to abide by the Constitution and rules of the NYSE. The NYSE Constitution, in turn, provides that:
 
 
 29
 [a]ny controversy between parties who are members, allied members or member organizations and any controversy between a member, allied member or member organization and any other person arising out of the business of such member, allied member or member organization ... shall at the instance of any such party be submitted for arbitration in accordance with th[e NYSE] Constitution and [NYSE rules].
 
 
 30
 NYSE Const. Art. XI, Sec. 1.
 
 
 31
 This, then, is the sum and substance of the parties' arbitration agreements. The defendants argue that the final clause of their respective arbitration agreements--which requires them to arbitrate "in accordance" with the provisions of the NYSE Constitution and NYSE rules--is simply a choice of law provision. Arbitration need not take place before the NYSE, they contend, so long as the NYSE's rules govern in a proceeding brought before whichever arbitral body hears the dispute. We cannot agree.
 
 
 32
 We do not write on a clean slate, since we faced similar language in PaineWebber, Inc. v. Rutherford, 903 F.2d 106 (2d Cir.1990) (Timbers, J.). The agreement there called for arbitration
 
 
 33
 "in accordance with the rules, then obtaining, of either the Arbitration Committee of the New York Stock Exchange, American Stock Exchange [ (the "AMEX") ], National Association of Securities Dealers [ (the "NASD") ] or, where appropriate, Chicago Board Options Exchange [ (the "CBOE") ] or Commodity Futures Trading Commission [ (the "CFTC") ]."
 
 
 34
 Id. at 107-08 (quoting the agreement). We held that this language "should be construed simply as an agreement to arbitrate before one of the [self-regulatory organizations]," e.g., the NYSE, AMEX, NASD, CBOE or CFTC, rather than in another arbitral forum, such as the American Arbitration Association. Id. at 108. We further held that the plaintiff had to "submit her claim to one of the ... fora provided for in the agreement or lose her right to arbitrate." Id. at 109; accord Dean Witter Reynolds Inc. v. Prouse, 831 F.Supp. 328, 329-31 (S.D.N.Y.1993) (applying Rutherford ); see also Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos, 553 F.2d 842, 843-44 (2d Cir.1977) (construing choice of law clause as forum selection clause).
 
 
 35
 We are not the only Circuit to so hold. In Luckie v. Smith Barney, Harris Upham & Co., 999 F.2d 509 (11th Cir.1993) (per curiam), the Eleventh Circuit construed a clause requiring arbitration " 'in accordance with the rules, then obtaining, of the [NYSE], [AMEX] or [NASD],' " 999 F.2d at 511, to mean that the parties had designated the NYSE, AMEX, and NASD as exclusive arbitral fora. Id. at 513-14. Likewise, in Roney & Co. v. Goren, 875 F.2d 1218 (6th Cir.1989), the Sixth Circuit interpreted an agreement providing for "arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the [NYSE]," 875 F.2d at 1219, as a forum selection clause meaning that only the NYSE could arbitrate a dispute between the parties. Id. at 1220-21. To the extent these decisions conflict with Zechman v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 742 F.Supp. 1359, 1364-66 (N.D.Ill.1990), upon which the defendants rely so heavily, we agree with our sister Circuits rather than that district court.
 
 
 36
 We are aware that some New York courts appear to have read similar clauses as mere choice of law provisions and not as an exclusive selection of a forum. See, e.g., Cowen & Co. v. Anderson, 76 N.Y.2d 318, 320-24, 559 N.Y.S.2d 225, 226-28, 558 N.E.2d 27, 28-29 (1990) (distinguishing Rutherford ); see also Koob v. IDS Fin. Servs., Inc., 213 A.D.2d 26, 33-35, 629 N.Y.S.2d 426, 433 (1st Dep't 1995) ("choice of law and choice of forum are entirely separate matters"). Nevertheless, we have long held that "[o]nce a dispute is covered by the [FAA], federal law applies to all questions of interpretation, construction, validity, revocability, and enforceability." Coenen v. R.W. Pressprich & Co., 453 F.2d 1209, 1211 (2d Cir.) (citing Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir.1959), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960)), cert. denied, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972). Accordingly, the question of who may arbitrate disputes between the parties, "being a question of 'interpretation and construction,' is governed by federal law." Id. at 1212 (quoting Metro Indus. Painting Corp. v. Terminal Constr. Co., 287 F.2d 382, 385 (2d Cir.), cert. denied, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961)) (internal quotation marks omitted); see Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 845 (2d Cir.1987) ("whether Genesco is bound by the arbitration clause of the sales confirmation forms is determined under federal law, which comprises generally accepted principles of contract law"); see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 1805-06, 18 L.Ed.2d 1270 (1967) (unless an alleged fraud permeates the arbitration clause itself, notwithstanding state law to the contrary, that clause is regarded as a separate agreement and, the issue of fraud in inducing the rest of the contract is one for the arbitrators).
 
 
 37
 Were our jurisdiction predicated upon diversity, there might be an argument that we should defer to the New York courts when construing the choice of law/forum provision. See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional, 991 F.2d 42, 46 & n. 6 (2d Cir.1993) (where FAA invoked via diversity jurisdiction, New York law controlled, unless preempted); Fahnestock & Co. v. Waltman, 935 F.2d 512, 518-19 (2d Cir.) (in diversity case, where arbitration clause is silent on whether arbitrator can award punitive damages, New York's law barring arbitral awards of punitive damages controls under Erie ), cert. denied, 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991), and cert. denied, 502 U.S. 1120, 112 S.Ct. 1241, 117 L.Ed.2d 474 (1992). But cf. Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987) (FAA preempts any state law that "takes its meaning precisely from the fact that a contract to arbitrate is at issue"). But this is not our case. The parties here were in federal court on a federal question--securities claims--to which were appended supplemental common law claims.
 
 III.
 
 38
 Because the parties had contractually agreed that only the NYSE could arbitrate any disputes between them, Judge Patterson properly declined to appoint substitute arbitrators and compel arbitration in another forum. See Volt Info. Sciences, Inc., 489 U.S. at 478, 109 S.Ct. at 1255. The defendants, however point to Sec. 5 of the FAA, which provides that:If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein....
 
 
 39
 9 U.S.C. Sec. 5.
 
 
 40
 Seizing upon Sec. 5, the defendants argue that, by bringing suit in federal court, the plaintiffs "fail[ed] to avail" themselves of the agreed upon method of arbitration, i.e., before the NYSE. They also contend that, because the NYSE refused to arbitrate the dispute, there was a "lapse in the naming of an arbitrator." For both reasons, they maintain that, under Sec. 5, Judge Patterson should have named substitute arbitrators and compelled arbitration. Properly construed, however, Sec. 5 cannot support the weight the defendants place upon it.
 
 
 41
 The "failure to avail" argument need not detain us long. That provision applies when an arbitration agreement designates an arbitrator, or specifies a procedure for selecting an arbitrator, and one of the parties refuses to comply, thereby delaying arbitration indefinitely. See, e.g., Pacific Reins. Mgt. Co. v. Ohio Reins. Corp., 814 F.2d 1324, 1327-29 (9th Cir.1987). True, the plaintiffs did not "avail" themselves of arbitration before the NYSE when they brought suit in federal court. But, once Judge Patterson referred the matter to the NYSE, the plaintiffs diligently and, ultimately, persuasively exhorted the NYSE not to accept the matter for arbitration because of the problems shareholder derivative suits pose. Consequently, the plaintiffs cannot be reasonably said to have "fail[ed] to avail" themselves of arbitration. To hold otherwise would mean that any time a party in good faith tested the scope of an arbitration agreement by bringing suit in court, the court could invoke Sec. 5 to name arbitrators without following any procedures or limitations contained in the agreement. Cf. In re Utility Oil Corp., 10 F.Supp. 678, 680-81 (S.D.N.Y.1934).
 
 
 42
 The "lapse" argument is no more compelling. Section 5 applies when there is "a lapse in the naming of an arbitrator ... or in filling a vacancy." 9 U.S.C. Sec. 5 (emphasis added). We believe that the "lapse" referred to in Sec. 5 means "a lapse in time in the naming of the" arbitrator or in the filling of a vacancy on a panel of arbitrators, Pacific Reins. Mgt. Corp., 814 F.2d at 1327, or some other mechanical breakdown in the arbitrator selection process, id. at 1329 (deadlock in naming of arbitrator). See, e.g., Marine Prods. Export Corp. v. M.T. Globe Galaxy, 977 F.2d 66, 68 (2d Cir.1992) (arbitrator's death left vacancy on panel); Chattanooga Mailers Union, Local No. 92 v. Chattanooga News-Free Press Co., 524 F.2d 1305, 1315 (6th Cir.1975) (agreement's procedure for selecting arbitrator no longer in effect), abrogated on other grounds by United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); Erving v. Virginia Squires Basketball Club, 468 F.2d 1064, 1067-68 & n. 2 (2d Cir.1972) (arbitrator designated in parties' agreement had conflict of interest). Here, upon the defendants' motion, Judge Patterson promptly referred the matter to the NYSE for arbitration. Hence, there was no lapse or breakdown in selecting the arbitrator.
 
 
 43
 We are not unaware that some district courts have appointed new arbitrators when the named arbitrators could not or would not proceed. See McGuire, Cornwell & Blakey v. Grider, 771 F.Supp. 319, 320 (D.Colo.1991) ("as a general rule, where the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, a court does not void the agreement but instead appoints a different arbitrator" under Sec. 5); Astra Footwear Indus. v. Harwyn Int'l, Inc., 442 F.Supp. 907, 910 (S.D.N.Y.) ("a lapse in the naming" of the arbitrator occurs "when the arbitrator selected by the parties cannot or will not perform"), aff'd, 578 F.2d 1366 (2d Cir.1978); see also Zechman, 742 F.Supp. at 1374-75 (compelling arbitration before neutral arbitrator despite agreement providing for arbitration " 'in accordance with regulations prescribed by the' " Chicago Board of Trade); Hawaii Teamsters & Allied Workers, Local 996 v. Honolulu Rapid Transit Co., 343 F.Supp. 419, 425 (D.Haw.1972) (in dicta, noting that court could appoint arbitrators under Sec. 5 if parties failed to agree on an arbitrator).
 
 
 44
 None of these cases, however, stands for the proposition that district courts may use Sec. 5 to circumvent the parties' designation of an exclusive arbitral forum. As we have already noted, we read the agreements here as providing for arbitration only before the NYSE. Thus, in contrast to Astra Footwear and Zechman, upon which the defendants so heavily rely, whether the NYSE would arbitrate the dispute "was central to the parties' agreement to arbitrate." Grider, 771 F.Supp. at 320. In such a case, where "it is clear that the failed [forum selection] term is not an ancillary logistical concern but rather is as important a consideration as the agreement to arbitrate itself, a court will not sever the failed term from the rest of the agreement and the entire arbitration provision will fail." Zechman, 742 F.Supp. at 1364; accord Grider, 771 F.Supp. at 320.
 
 
 45
 In addition, unlike Astra Footwear, here the "dominant intent" of the parties was "to arbitrate before particular arbitrators." Id. at 909 (court could invoke Sec. 5 because parties intended to arbitrate generally, rather than only if a certain forum was available). Moreover, unlike Astra Footwear, here, the "equities of the case" favor proceeding to trial. Id. at 910. Four years have elapsed, after all, since this suit began. While that delay may not be the defendants' fault, surely the plaintiffs are entitled to a speedy resolution of their claims.
 
 
 46
 Accordingly, Judge Patterson properly declined the defendants' invitation to appoint substitute arbitrators over the plaintiffs' objection. Cf. National Iranian Oil Co. v. Ashland Oil, Inc., 817 F.2d 326, 333-35 (5th Cir.) (where parties' agreement evinces their intent that laws and procedures of a particular forum will govern any arbitration between them, a federal court need not compel arbitration if that forum is unavailable), cert. denied, 484 U.S. 943, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987).
 
 IV.
 
 47
 We conclude with a word of caution to district courts regarding First Options. When a party to an arbitration agreement moves to stay a proceeding pending arbitration or to compel arbitration under the FAA, the district court must determine whether, under the arbitration agreement, the court or the arbitrator is to decide questions of arbitrability. See --- U.S. at ---- - ----, 115 S.Ct. at 1924-26. The district court should make that determination unequivocally then and there. It should not refer the matter to an arbitrator for, in effect, an advisory opinion on the arbitrability of the dispute.
 
 
 48
 That said, the arbitration agreements here required that any arbitration be before the NYSE, and not before any other arbitral forum. Accordingly, we will not disturb Judge Patterson's decision to proceed to trial. The decision below is AFFIRMED.