15-2513-cv(L)
Moss v. First Premier Bank

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
_____

August Term, 2015

(Argued: April 8, 2016                    Decided: August 29, 2016)

Docket Nos. 15-2513-cv(L); 15-2667-cv(CON)

_____

DEBORAH MOSS, on behalf of herself and
all others similarly situated,

*Plaintiff-Appellee,*

v.

FIRST PREMIER BANK, a South Dakota
state-chartered bank, and BAY CITIES BANK,
a Florida state-chartered bank,

*Defendants-Appellants.*[1]

_____

Before: POOLER, LIVINGSTON, and LOHIER, *Circuit Judges*.

[1] The Clerk of Court is respectfully directed to amend the caption as above.

Appeal from a July 16, 2015 order of the United States District Court for the Eastern District of New York (Bianco, *J.*), vacating a prior order compelling arbitration. The parties agreed to arbitrate their disputes before the National Arbitration Forum ("NAF"), which no longer accepts consumer arbitrations. The district court held that it could not appoint a substitute arbitrator because the language of the arbitration agreement contemplated arbitration only before NAF. We agree with the district court and therefore AFFIRM.

Affirmed.

_____

ERIC RIEDER, Bryan Cave LLP (Megan Awerdick Pierson, *on the brief*), New York, NY, *for Defendant-Appellant Bay Cities Bank*.

Bryan R. Freeman, Lindquist & Vennum LLP, Minneapolis, MN; Bryan Craig Meltzer, Herrick, Feinstein LLP, *for Defendant-Appellant First PREMIER Bank*.

J. AUSTIN MOORE, Stueve Siegel Hanson LLP (Norman E. Siegel, Steve N. Nix, Stueve Siegel Hanson LLP; Darren T. Kaplan, New York, NY; Hassan Zavareei, Jeffrey D. Kaliel, Tycko & Zavareei, Washington, D.C., *on the brief*), Kansas City, MO, *for Plaintiff-Appellee*.

2

POOLER, *Circuit Judge*:

Deborah Moss signed an arbitration agreement providing that any disputes between her and her payday lender would be resolved by arbitration before the National Arbitration Forum ("NAF"). When she tried to take her case to arbitration, however, NAF refused to accept it pursuant to a consent decree that prohibited NAF from accepting consumer arbitrations. The district court (Bianco, *J.*) construed the arbitration agreement as contemplating arbitration *only* before NAF and declined to compel Moss to arbitrate before a different arbitrator. We agree with the district court's construction of the agreement and accordingly affirm.

## BACKGROUND

Deborah Moss took out three payday loans from an online payday lender, SFS, Inc. ("SFS"). When a payday lender such as SFS agrees to loan a customer money, it relies on banks to serve as middlemen to debit the customer's account. These banks are known as "Originating Depository Financial Institutions," or "ODFIs." First Premier Bank and Bay Cities Bank each served as an ODFI for one of Moss's payday loans with SFS.

3

When Moss applied for the loans, she electronically signed an application that included an arbitration clause. The arbitration clause on one of the applications provided,

> Arbitration of All Disputes: You and we agree that any and all claims, disputes or controversies between you and us, any claim by either of us against the other . . . and any claim arising from or relating to your application for this loan, regarding this loan or any other loan you previously or may later obtain from us, this Note, this agreement to arbitrate all disputes, your agreement not to bring, join or participate in class actions, regarding collection of the loan, alleging fraud or misrepresentation . . . including disputes regarding the matters subject to arbitration, or otherwise, shall be resolved by binding individual (and not joint) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed. . . . Rules and forms of the NAF may be obtained and all claims shall be filed at any NAF office, on the World Wide Web at aww.arb-forum.com, by telephone at 800-474-2371, or at "National Arbitration Forum, P.O. Box 50191, Minneapolis, Minnesota 55405." Your arbitration fees will be waived by the NAF in the event you cannot afford to pay them.

App'x at 168. The following notice is printed directly beneath the arbitration provision: "NOTICE: YOU AND WE WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND HAVE A JUDGE OR JURY DECIDE THE DISPUTES BUT HAVE AGREED INSTEAD TO RESOLVE DISPUTES THROUGH BINDING ARBITRATION." App'x at 168. The other applications Moss signed contained similar arbitration clauses.

4

Moss filed a putative class action against First Premier Bank and Bay Cities Bank in federal court, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and state law. In short, Moss alleged that the banks unlawfully facilitated high-interest payday loans that have been outlawed in several states.

The banks moved to compel arbitration on the basis of the arbitration agreements that Moss signed when she applied for the loans. Although the banks were not parties to those agreements, they argued that they were entitled to enforce the agreements against Moss under principles of estoppel. The district court agreed and initially granted the banks' motion to compel arbitration and stayed the proceedings.

After the district court ordered the parties to arbitrate, Moss sent a letter to NAF indicating her intent to arbitrate her claims. NAF responded that it was unable to accept Moss's dispute pursuant to a consent judgment that it had entered into with the Minnesota Attorney General. In 2009, the Minnesota Attorney General had sued NAF for consumer fraud, deceptive trade practices, and false advertising. The complaint alleged that, although NAF represented itself as an independent and impartial arbiter, the forum was in fact "work[ing]

alongside creditors behind the scenes . . . to convince [them] to place mandatory pre-dispute arbitration clauses in their customer agreements and to appoint [NAF] as the arbitrator of any disputes that may arise in the future." App'x at 455-56. NAF also allegedly "ma[de] representations that align[ed] itself against consumers" to solicit creditors to use its arbitration services. App'x at 457. To settle the lawsuit, NAF entered into a consent decree that prohibited it from accepting consumer arbitrations such as Moss's.

After NAF declined to accept her dispute, Moss returned to federal court and moved to vacate the district court's order compelling arbitration, arguing that she could not arbitrate her claims because NAF declined to arbitrate her case. The district court granted the motion. *See Moss v. BMO Harris Bank, N.A.*, 114 F. Supp. 3d 61, 63 (E.D.N.Y. 2015). The court concluded that the language of the arbitration agreements reflected the parties' intent to arbitrate exclusively before NAF. *Id.* at 66. The court further concluded that, under this Court's decision in *In re Salomon Inc. Shareholders' Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995), a district court may not appoint a substitute arbitrator under such circumstances. *Moss*, 114 F. Supp. 3d at 66. The court vacated its prior order and lifted its stay of the proceedings, holding that Moss "cannot be compelled to

arbitrate her claims against Bay Cities Bank and First Premier Bank." *Id.* at 68.

This appeal followed.

**DISCUSSION**

We have jurisdiction to review an order "refusing a stay of any action under section 3" of the Federal Arbitration Act. 9 U.S.C. § 16(a)(1)(A). Here, the order appealed from lifted a prior stay under Section 3 and vacated a prior order compelling arbitration. Because the order appealed from "was effectively one 'refusing a stay,'" we have jurisdiction to review it. *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1290 (10th Cir.), *cert. denied*, 136 S. Ct. 373 (2015); *see also Dobbins v. Hawk's Enters.*, 198 F.3d 715, 716 (8th Cir. 1999) (holding that court had jurisdiction to review order lifting stay of arbitration because it was an "order refusing to compel arbitration"); *Corpman v. Prudential-Bache Sec., Inc.*, 907 F.2d 29, 30 (3d Cir. 1990) (same). We review the district court's order de novo. *See Mediterranean Shipping Co. S.A. Geneva v. POL-Atl.*, 229 F.3d 397, 402 (2d Cir. 2000).

Section 2 of the Federal Arbitration Act (FAA) provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter

7

arising out of such contract . . . shall be valid, irrevocable, and enforceable."

9 U.S.C. § 2.

> This text reflects the overarching principle that arbitration is a matter of contract. And consistent with that text, courts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.

*Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. __, 133 S. Ct. 2304, 2309 (2013) (alterations, emphasis, citations, and internal quotation marks omitted). As with any contract, "the parties' intentions control." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (internal quotation marks omitted). To discern the parties' intentions, we look to the language of the agreement. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996).

The arbitration agreement in this case provides that any disputes shall be resolved "by binding individual (and not joint) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed." App'x at 168. The agreement does not address how the parties should proceed in the event that NAF is unable to accept the dispute. The

question is whether a court may compel arbitration when the designated arbitrator is unavailable.

We addressed that question in *In re Salomon Inc. Shareholders' Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995). There, a group of shareholders brought a derivative suit against former executives of Salomon Brothers. *Id.* at 555. The executives had signed arbitration agreements with Salomon Brothers providing that "any controversy . . . arising out of [the employee's] employment . . . shall be settled by arbitration at the instance of any such party in accordance with the Constitution and rules then obtaining of the [New York Stock Exchange]." *Id.* at 558. The executives moved to compel arbitration, and the district court granted the motion, referring the matter to the New York Stock Exchange ("NYSE"). *Id.* at 555. NYSE declined to arbitrate the dispute, invoking its discretion under its constitution to decline to arbitrate cases referred to it. *Id.* at 555-56. The executives then returned to the district court and requested that the court appoint a substitute arbitrator pursuant to Section 5. *Id.* at 557. The court denied the motion. *Id.*

We affirmed. We held that where "the parties ha[ve] contractually agreed that *only* [one arbitrator] could arbitrate any disputes between them," a district

9

court must "decline[] to appoint substitute arbitrators and compel arbitration in another forum." *Id.* at 559. This is because

> [a]lthough the federal policy favoring arbitration obliges us to resolve any doubts in favor of arbitration, we cannot compel a party to arbitrate a dispute before someone other than the [designated arbitrator] when that party had agreed to arbitrate disputes only before the [arbitrator] and the [arbitrator], in turn, exercising its discretion . . . , has refused . . . to arbitrate the dispute in question.

*Id.* at 557-58. Once the designated arbitrator refuses to accept arbitration, there is "no further promise to arbitrate in another forum." *Id.* at 557.

Thus, under *Salomon*, the question in this case is whether the language of the parties' agreement contemplates arbitration before only NAF, or whether it contemplates the appointment of a substitute arbitrator should NAF become unavailable. In *Salomon*, we concluded that the parties' agreement to arbitrate "in accordance with the Constitution and rules then obtaining of the NYSE" evinced their intent to "designat[e] . . . an exclusive arbitral forum." *Id.* at 558, 561 (alteration omitted).

The same is true here. The arbitration agreement in this case contains numerous indicators that the parties contemplated one thing: arbitration before NAF. The agreement provides that disputes "shall be resolved by binding

10

individual (and not joint) arbitration by . . . the National Arbitration Forum."

App'x at 168. It provides that the arbitration shall be conducted "under the Code

of Procedure of the National Arbitration Forum." App'x at 168. It requires that

claims "shall be filed at any NAF office." App'x at 168. And it provides that, if

the claimant is unable to pay the costs of the arbitration, fees may be waived

"by . . . NAF." App'x at 168. Further, the agreement makes no provision for the

appointment of a substitute arbitrator should NAF become unavailable. In view

of this mandatory language, the pervasive references to NAF in the agreement,

and the absence of any indication that the parties would assent to arbitration

before a substitute forum if NAF became unavailable, we conclude that, as in

*Salomon*, the parties agreed to arbitrate only before NAF.

    Appellants contend that the district court was required to appoint a

substitute arbitrator pursuant to Section 5 of the FAA. Section 5 provides,

> If in the agreement provision be made for a method of naming or
> appointing an arbitrator or arbitrators or an umpire, such method
> shall be followed; but if no method be provided therein, or if a
> method be provided and any party thereto shall fail to avail himself
> of such method, or if for any other reason there shall be a lapse in
> the naming of an arbitrator or arbitrators or umpire, or in filling a
> vacancy, then upon the application of either party to the controversy
> the court shall designate and appoint an arbitrator or arbitrators or
> umpire, as the case may require, who shall act under the said

11

agreement with the same force and effect as if he or they had been specifically named therein . . . .

9 U.S.C. § 5. Appellants contend that NAF's inability to accept this case constitutes a "lapse" within the meaning of Section 5 such that the district court was required to appoint a substitute arbitrator.

In *Salomon*, we held that the "lapse" referred to in Section 5 "means a lapse in time in the naming of the arbitrator or in the filling of a vacancy on a panel of arbitrators or some other mechanical breakdown in the arbitrator selection process." *Id.* at 560 (citations and internal quotation marks omitted). A district court may not, however, "use [Section] 5 to circumvent the parties' designation of an exclusive arbitral forum." *Id.* at 561. We concluded that because the district court "promptly referred the matter to the NYSE for arbitration," there "was no lapse or breakdown in selecting the arbitrator." *Id.*

Under *Salomon*, there was no "lapse in the naming of an arbitrator" in this case. Here, as in *Salomon*, the parties designated an exclusive arbitral forum, the district court compelled the parties to arbitrate before that forum, and the forum declined to accept the case. In *Salomon*, we held that, under such circumstances, a

12

court cannot use Section 5 to circumvent the clear text of the parties' agreement and appoint a substitute arbitrator.

Appellants try to distinguish *Salomon* on the ground that, in that case, NYSE "exercise[d] its discretion" not to accept the arbitration, whereas, here, NAF is unavailable because it cannot accept consumer arbitrations pursuant to a consent decree. Appellants' Br. at 18. We do not find this to be a meaningful distinction. Under *Salomon*, the dispositive factor is not why the designated arbitral forum is unavailable, but rather whether the designated forum was "exclusive." Where the forum is exclusive, the district court may not "use [Section] 5 to circumvent the parties' designation of an exclusive arbitral forum." *Salomon*, 68 F.3d at 561.

Appellants also rely on two pre-*Salomon* cases in support of their position that Section 5 required the district court to appoint a substitute arbitrator in this case. *See Astra Footwear Indus. v. Harwyn Int'l, Inc.*, 442 F. Supp. 907 (S.D.N.Y. 1978); *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064 (2d Cir. 1972). But *Salomon* considered and distinguished both of these cases. 68 F.3d at 560-61. Moreover, *Astra* was a district-court decision. It was affirmed in a one-word, unpublished opinion. *Astra Footwear Indus. v. Harwyn Int'l Inc.*, 578 F.2d 1366 (2d

13

Cir. 1978). Thus, to the extent the district court's reasoning in *Astra* conflicts with *Salomon*, we are bound to follow *Salomon*. And in *Erving*, the arbitration agreement provided that disputes would be arbitrated before a designated arbitrator *or* that person's designee, undercutting the notion that the parties intended to arbitrate exclusively before the designated arbitrator. 468 F.2d at 1066 n.1. Further, the court in *Erving* did not analyze the language of Section 5 or address whether a "lapse" within the meaning of Section 5 had occurred in that case. Thus, like the district court, we find *Salomon* to be more instructive on the applicability of Section 5 than either *Astra* or *Erving*.

Finally, we acknowledge that there is a difference of opinion among the circuits on this issue. *Compare Flagg v. First Premier Bank*, No. 15-14052, 2016 WL 703063, at *4 (11th Cir. Feb. 23, 2016) (unpublished opinion) (holding that "[b]ecause the choice of the NAF as the arbitral forum was an integral part of the agreement to arbitrate, we conclude that the district court properly denied First Premier's motion to compel arbitration and appoint a substitute for NAF"), *and Ranzy v. Tijerina*, 393 Fed. Appx. 174, 176 (5th Cir. 2010) (unpublished opinion) (following *Salomon* to conclude that district court properly denied motion to compel arbitration given NAF's unavailability), *with Green v. U.S. Cash Advance*

14

*Ill., LLC*, 724 F.3d 787, 793 (7th Cir. 2013) (holding that Section 5 required court to appoint substitute arbitrator), *and Khan v. Dell Inc.*, 669 F.3d 350, 356 (3d Cir. 2012) (finding *Salomon* "unpersuasive" and holding that NAF's unavailability constituted a lapse within the meaning of Section 5). Like the district court, however, we are bound by *Salomon*. Thus, while some circuits have chosen to follow *Salomon* and others have not, we are not free to make that choice. The only question that we can decide is whether, applying *Salomon*, the district court correctly declined to compel Moss to arbitrate her claims before a forum to which she did not agree. We hold that it did.

## CONCLUSION

For the foregoing reasons, we AFFIRM the order of the district court and REMAND for further proceedings.