22-2959
*Brown v. Peregrine Enters., Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of December, two thousand twenty-three.

PRESENT:

> JOHN M. WALKER, JR.,
> REENA RAGGI,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

———————————————————————————

ANGELA BROWN, LAUREN FARANO, YANA TOYBER, SUSANA VARGAS, and ASHLEY VENECIA, individually and on behalf of all others similarly situated, and MARINA PAPADAKIS, individually,

*Plaintiffs-Appellees,*

v.                                                      No. 22-2959

PEREGRINE ENTERPRISES, INC., DBA RICK'S CABARET NEW YORK, RCI ENTERTAINMENT (NEW YORK) INC., RCI HOSPITALITY HOLDINGS, INC., FKA RICK'S CABARET INTERNATIONAL, INC., RCI MANAGEMENT SERVICES, ERIC LANGAN, and ED ANAKAR,

*Defendants-Appellants.\**

———————————————————————————

———————————————

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

For Defendants-Appellants: JEFFREY A. KIMMEL (M. Adil Yaqoob, *on the brief*), Akerman LLP, New York, NY.

For Plaintiffs-Appellees: NEIL K. SAWHNEY (Jennifer Bennett, *on the brief*), Gupta Wessler PLLC, San Francisco, CA; John Kristensen, Carpenter & Zuckerman, Beverley Hills, CA (*on the brief*).

Appeal from an order of the United States District Court for the Southern District of New York (Katherine Polk Failla, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the November 3, 2022 order of the district court is **VACATED** and the case is **REMANDED**.

Peregrine Enterprises, Inc. – which along with the other defendants (collectively, "Peregrine") operates a strip club in Manhattan known as Rick's Cabaret New York – appeals from an order of the district court granting plaintiffs' motion to lift a stay of litigation pending arbitration and denying Peregrine's cross-motions to appoint a substitute arbitrator and to strike collective-action claims from plaintiffs' complaint. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

On February 22, 2022, plaintiffs – a group of entertainers who previously performed at Rick's Cabaret – filed a complaint on behalf of a putative class

2

alleging violations of the Fair Labor Standards Act and New York Labor Law. Consistent with an arbitration provision in the Entertainer License Agreements (the "ELAs") previously executed by the parties, plaintiffs and Peregrine consented to arbitrate plaintiffs' claims, and the district court stayed the federal case pending arbitration.[1] Eighteen plaintiffs then filed individual demands with the American Arbitration Association (the "AAA").

Before opening the matters, the AAA applied its "Commercial Arbitration Rules and Employment/Workplace Fee Schedule," which provided that an "individual's portion of the filing fee" was "$300.00" and the "company['s] . . . share" was "$34,200.00 ($1900 x 18 cases)[.]" App'x at 72 (emphasis omitted). Plaintiffs paid the $300 per plaintiff filing fee requested by the AAA. In a series of letters to the AAA, Peregrine represented that it was "ready, willing, and able to proceed to arbitration on terms consistent with the provisions set forth in the arbitration agreements entered into between each [plaintiff] and [Peregrine]." *Id.* at 74; *see also id.* at 75, 89–90. But it "request[ed] that the AAA . . . equalize the parties' filing fees," *id.* at 75, 90, since the arbitration

---

[1] Although there are slight variations among the ELAs that each of the plaintiffs executed with Peregrine, they are not material to the issues on appeal. Accordingly, all references to the ELAs, unless otherwise indicated, are based on the one executed by plaintiff Angela Brown. *See* App'x at 46–54.

provisions provided that the parties would equally share arbitration costs prior to any final determination by the AAA, *id.* at 53. The AAA refused to depart from its Fee Schedule to charge the filing fees equally to the parties, and noted that "any further dispute[s] [could] be raised to the attention of the arbitrator once one ha[d] been assigned" after "all the filing requirements ha[d] been met." *Id.* at 86, 93. In the end, Peregrine did not submit the filing fees that the AAA requested, and the AAA "administratively closed [its] file in th[e] matter" and "decline[d] to administer any future employment matter[s] involving [Peregrine]." *Id.* at 101. Plaintiffs moved to lift the stay in the federal proceeding, which the district court granted, while denying Peregrine's cross-motions to appoint a substitute arbitrator and to strike plaintiffs' collective-action claims. Peregrine timely appealed from this order.

We have jurisdiction under section 16 of the Federal Arbitration Act (the "FAA"). *See Moss v. First Premier Bank*, 835 F.3d 260, 264 (2d Cir. 2016) (explaining that an appellate court has jurisdiction to review an order lifting a stay of arbitration, which is tantamount to "refusing a stay" under section 3 of the FAA (quoting 9 U.S.C. § 16(a)(1)(A))).

4

Peregrine first contends that the district court erred in lifting the litigation stay based on its finding that the arbitrations "ha[d] been had in accordance with the [ELAs]" under section 3 of the FAA. *See* App'x at 127 (citing 9 U.S.C. § 3). We review *de novo* a district court's decision to lift a stay of a federal action pending arbitration. *See Moss*, 835 F.3d at 264. Section 3 of the FAA provides, in relevant part, that courts must stay litigation "until . . . arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. This stay requirement prevents litigation in federal court until a final arbitral award has been rendered; after that, the stay can be lifted to allow for "a subsequent proceeding to confirm, modify, or set aside the arbitration award." *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 202 (2000) (citing 9 U.S.C. §§ 9–11).

Here, the arbitration provision in section 15 of the parties' agreement stated that "the parties to arbitration shall equally share the costs and expenses charged by the AAA or the arbitrator during the pendency of the arbitration prior to a determination of which is the prevailing party." App'x at 53 (emphasis and capitalization omitted). Moreover, section 15 expressly provided that the arbitration terms from the agreements would trump any of the AAA's own rules. *See id.* at 51 ("The arbitrator will have no authority to make any ruling, finding[,]

5

or award that does not conform to the terms and conditions of this Agreement." (emphasis omitted)); *id.* ("The arbitrator shall give effect insofar as possible to the desire of the parties hereto that the dispute or controversy be resolved in accordance with . . . the provisions of this Agreement." (emphasis omitted)); *id.* (noting that the AAA's rules would apply "except to the extent that such rules conflict with the provisions of this agreement, including [s]ection 15, in which event the provisions of this agreement shall control" (emphasis omitted)); *id.* at 52 ("The arbitrator shall not have the power to alter or modify any express provision of this agreement, or to render an award which, by its terms, has the result of effecting such alteration or modification." (emphasis omitted)).  Nonetheless, in adhering to its own Fee Schedule rather than the parties' bargained-for terms, the AAA demanded that Peregrine pay over 86% of the parties' filing fees, *see id.* at 72, and then administratively closed the case when Peregrine refused to do so, *see id.* at 101.

On these facts, we cannot agree with the district court's finding that the arbitrations "*ha[d] been had in accordance with the [terms of the ELAs]*." App'x at 127–29 (emphasis added) (citing 9 U.S.C. § 3).  Rather, the record indicates that no arbitration was had under either the ELAs' terms or the AAA's Rules.  Further,

6

while the AAA notified the parties that it would terminate proceedings if Peregrine failed to pay the amount required by its rules, it does not appear to have followed the multi-step process required by its rules. *See Billie v. Coverall N. Am. Inc.*, No. 22-718-cv, 2023 WL 2531396, at *3 (2d Cir. Mar. 15, 2023) (concluding that "arbitration ha[d] [not] been had" where parties and arbitrator did not follow "multi-step termination process overseen by the arbitrator" under AAA's rules (quoting 9 U.S.C. § 3)). Notably, the plaintiffs did not request that "the arbitrator suspend the arbitration" because "full deposits ha[d] not been paid" pursuant to Rule 57(e) of the AAA's Commercial Rules. *Id.* On this record, we conclude that the district court could not find that "the arbitration[s] ha[d] been had in accordance with the terms of the agreement," 9 U.S.C. § 3, and, therefore, should not have lifted the stay of litigation on this basis.

Peregrine also challenges the district court's alternate basis for lifting the stay based on its finding that Peregrine had waived arbitration. "[T]he right to arbitration, like any other contract right, can be waived." *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 455 (2d Cir. 1995) (internal quotation marks omitted). We have "equated a waiver of the right to arbitrate with a default in proceeding with such arbitration under [section] 3 [of the FAA]." *Id.* (internal quotation marks omitted).

7

A "default," in turn, "refer[s] to a party who, when requested, has refused to go to arbitration or who has refused to proceed with the hearing before the arbitrators once it has commenced." *Id.* at 454 (internal quotation marks omitted).

As an initial matter, the district court erroneously applied a two-part waiver test by looking to (1) whether a party acted inconsistently with its arbitration right and (2) whether the conduct caused prejudice to the other party. To be sure, this test was once proper under the law of this Circuit. *See Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968), *abrogated by Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). But the prejudice requirement has since been "[s]tripped" from the waiver inquiry, which now involves asking only whether a party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right[.]" *Sundance, Inc.*, 596 U.S. at 419.

Here, we cannot say that Peregrine acted so inconsistently with its arbitration right as to have waived arbitration. Even if it could be argued that the AAA was justified in insisting on Peregrine's compliance with its Fee Schedule to commence arbitration, Peregrine cannot be faulted for standing on its contractual entitlements under the ELAs, given the parties' express agreement that the ELAs' arbitration provisions would supersede any of the AAA's rules to the extent the

8

two might conflict. *See Billie*, 2023 WL 2531396, at *3 (finding that defendant was not "in default" where defendant refused to advance fees and arbitration agreement stated that costs of arbitration would be "shared equally between the Parties"). Moreover, on at least three separate occasions, Peregrine communicated to the plaintiffs and the AAA that it was "ready, willing, and able to proceed to arbitration on terms consistent with the [arbitration] provisions." App'x at 74–75; *see also id.* at 89–90, 116. In light of the clear terms of the ELAs, it cannot be said that Peregrine acted so inconsistently with its arbitration rights as to have waived them when it invoked contractual protections for which it had negotiated. *Cf. Sundance, Inc.*, 596 U.S. at 418 (explaining that we are to "hold a party to its arbitration contract just as the court would to any other kind").

For its part, Peregrine maintains that the district court erred in not appointing a substitute arbitrator after the AAA decided not to hear the case. Section 5 of the FAA provides that "if a method" "of naming or appointing an arbitrator" "be provided and [1] any party thereto shall *fail to avail* himself of such method, or [2] if for any other reason there shall be a *lapse* in the naming of an arbitrator[,] . . . then upon the application of either party to the controversy[,] the court shall designate and appoint an arbitrator." 9 U.S.C. § 5 (emphasis added).

Under the law of this Circuit, however, "district courts may [not] use [section] 5 to circumvent the parties' designation of an exclusive arbitral forum." *In re Salomon Inc. S'holders Derivative Litig.*, 68 F.3d 554, 561 (2d Cir. 1995). Thus, the touchstone of the substitute-arbitrator inquiry under section 5 of the FAA is "whether the language of the parties' agreement contemplate[d] arbitration before only [a particular arbitrator], or whether it contemplate[d] the appointment of a substitute arbitrator should [the designated arbitrator] become unavailable." *Moss*, 835 F.3d at 265; *see also In re Salomon*, 68 F.3d at 557–58.

Here, the ELAs clearly establish that the parties contemplated arbitration before the AAA only. First, section 15 of the ELAs stated that arbitration would be before "an impartial independent appointed by the [AAA's] New York branch." App'x at 51. Further, "[t]he parties agree[d] that the AAA Optional Rules for Emergency Measures of Protection shall apply"; that "the arbitrator shall apply the commercial arbitration rules of the [AAA]"; and that any appeals would be governed by "the AAA's optional appellate arbitration rules." *Id.* at 51, 52 (emphasis omitted). Finally, "the agreement makes no provision for the appointment of a substitute arbitrator should [the AAA] become unavailable." *Moss*, 835 F.3d at 265. Accordingly, we conclude that the parties opted to arbitrate

10

exclusively before the AAA, and that the district court did not err in declining to appoint an arbitrator under the "lapse" provision of section 5.

This is not to foreclose the district court, upon application by either party on remand, from considering the propriety of compelling arbitration under section 4 of the FAA and directing plaintiffs to pay their equal share of the arbitration fees under the ELAs to initiate such arbitration before the AAA, which will need to decide whether it still "decline[s] to administer any future employment matter[s] involving [Peregrine]." App'x at 101; *see* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."). Nor do we now express any view on a possibility not specifically raised by the parties: whether the "failure to avail" prong under section 5 permits the court to appoint a different arbitrator. *See* 9 U.S.C. § 5 (providing that courts may appoint another arbitrator if "any party [has] fail[ed] to avail himself of [the parties'] method" "of naming or appointing an arbitrator").[2] We here conclude

---

[2] Although "district courts may [not] use [section] 5 to circumvent the parties' designation of an exclusive arbitral forum," *In re Salomon*, 68 F.3d at 561, based on "the 'lapse' referred to in [s]ection 5," *Moss*, 835 F.3d at 266, we have been careful in distinguishing "failure[-]to[-]avail"

11

only that the district court improperly lifted the stay to the benefit of the party that refused to comply with the express terms of the ELAs.

We have considered the parties' remaining arguments and find them to be without merit.[3]  Accordingly, we **VACATE** the order of the district court and **REMAND** the case for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

arguments from "lapse" arguments, *see In re Salomon* at 566 (explaining that the "failure[-]to[-]avail . . . provision applies when an arbitration agreement designates an arbitrator . . . and one of the parties refuses to comply, thereby delaying arbitration indefinitely").  Indeed, in "failure-to-avail" cases, *Salomon* and *Moss*'s central concern – that courts might interfere with the parties' rights to an exclusive arbitrator by appointing a substitute arbitrator – is tempered by the fact that one party has stalled arbitration by refusing to abide by arbitration terms, thereby denying the other party its right to arbitration in its entirety.  In such cases, it is by no means clear that courts are powerless to appoint another arbitrator under section 5.

[3] Peregrine also argues that the district court erred by not striking plaintiffs' collective-action claims in the federal lawsuit.  In light of our determinations that the arbitrations "ha[d] [not] been had in accordance with the terms of the [ELAs]" under section 3 of the FAA, 9 U.S.C. § 3, and that Peregrine did not waive its arbitration rights by refusing to advance the plaintiffs' arbitration fees, we need not decide whether the collective-action waivers would apply were the case to proceed as a federal action.