Western & Southern Life Ins. Co. v U.S. Bank N.A. (2022 NY Slip Op 04886)

 Western & Southern Life Ins. Co. v U.S. Bank N.A.

2022 NY Slip Op 04886

Decided on August 09, 2022

Appellate Division, First Department

PITT, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 09, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
Jeffrey K. Oing Anil C. Singh Saliann Scarpulla Bahaati E. Pitt

Index No. 650259/19 Appeal No. 14893 Case No. 2020-04532 

[*1]The Western and Southern Life Insurance Company et al., Plaintiffs-Respondents-Appellants,
v
U.S. Bank National Association, Defendant-Appellant-Respondent.

Defendant appeals, and plaintiffs cross-appeal from the order of the Supreme Court, New York County (Joel M. Cohen, J.) entered November 5, 2020, which, insofar as appealed from as limited by the briefs, denied defendant's motion pursuant to CPLR 3211 to dismiss claims that it was required to enforce the mortgage sellers' obligation with respect to certain HEMT and CMALT trusts to repurchase defective loans, the pre-event of default claims based on breach of a covenant, as opposed to breach of a representation and warranty, with respect to the CMALT trust, and the post-event of default claims for the CMALT trust and seven other trusts, and granted defendant's motion as to post-event of default claims for the HEMT trust.

Jones Day, New York (Michael T. Marcucci, David F. Adler of counsel), and Louis A. Chaiten, Cleveland OH, of the bar of the State of Ohio, admitted pro hac vice, of counsel, for appellant-respondent.
Wollmuth Maher & Deutsch LLP, New York (William A. Maher, David H. Wollmuth, Steven S. Fitzgerald and Roselind F. Hallinan of counsel), for respondents-appellants.

PITT, J.

This case involves residential mortgage-backed securities (RMBS). Usually, this type of case is filed by an RMBS trustee because they are generally the only party with standing to assert the trust's right to compel repurchase of defective loans and to take action against the parties responsible for the improper servicing of loans. Here, however, plaintiffs, as certificateholders of nine RMBS trusts,[FN1] bring this action for breach of contract against defendant U.S. Bank National Association, as trustee of the nine RMBS trusts, for failure to carry out its alleged duties as trustee in response to the contractual breaches by other transaction parties. The main issues raised in this appeal are: (1) whether the governing trust documents imposed contractual obligations on the trustee (with regard to the HEMT and CMALT trusts) to identify and take action before an event of default (EOD) arose (pre-EOD claims); and (2) whether plaintiffs may rely on the servicers' annual assessments and the trustee's letter to the servicer to satisfy the "written notice" element of the claim that the trustee breached its contractual obligations to take action as a "prudent" trustee after an EOD arose (post-EOD claims).
RMBS Generally This opinion assumes a general familiarity with RMBS cases. Briefly, an RMBS securitization involves bundling mortgage loans together to create a financial instrument known as the RMBS. In each securitization, a "sponsor" or "seller" forms a loan pool from the mortgage loans and transfers the pool to a special purpose entity that is affiliated with the sponsor, known as the depositor.
When the RMBS transaction closes, the sponsor makes representations and warranties (R&W's) as to the quality and characteristics of the mortgage loans deposited in the trust. The depositor segments the loans in the pool according to their level of risk. The segmented loan [*2]pool is then conveyed to a trust, which issues certificates to the depositor. These certificates are sold to an underwriter which re-sells them to investors (certificateholders) who then collect the revenue streams generated by the payments made on the underlying mortgage loans.
Pursuant to the governing pooling and servicing agreement (PSA), the sponsor appoints a servicer or master servicer to collect payments on the underlying mortgage loans. The servicer or master servicer then directs the funds to a trustee, here US Bank (defendant or trustee), which transfers the payments to the certificateholders.
The governing PSA also sets forth the contractual rights and obligations of the parties to the RMBS trust. As relevant to this appeal, the trustee's duties and obligations are divided into two parts, pre-EOD and post-EOD. This distinction is significant, because prior to an EOD, the trustee's duties are limited to those specifically outlined by the PSA. After an EOD, the trustee's duties become elevated to that of a prudent person. This distinction is also important, because the trustee's duties under the PSA are at the center of the dispute between the parties.
Procedural History
Plaintiffs assert a single cause of action for breach of contract and allege that defendant failed to exercise its rights and duties as trustee under the governing PSAs by failing to: (i) provide notice of R&W violations by the sponsors and originators; (ii) provide notice of the servicers' and master servicers' failure to give notice of those same R&W violations; (iii) cause the responsible parties to repurchase or substitute loans that were subject to a breach of representation or warranty or missing documentation required to be delivered under the PSAs; and (iv) exercise all rights and remedies available to defendant under the PSAs upon the occurrence of an EOD.
Supreme Court granted defendant's motion to dismiss, and, as relevant to this appeal, dismissed plaintiffs' post-EOD claims as to HEMT for failure to allege written notice of an EOD to defendant.[FN2] Supreme Court denied defendant's motion as to plaintiffs': (1) pre-EOD claims that defendant was required to enforce the obligation of the seller of mortgage loans in HEMT and CMALT to repurchase defective loans; (2) pre-EOD claims based on a breach of a covenant, as opposed to breach of a representation and warranty, in CMALT; and (3) post-EOD claims for eight of the nine trusts at issue in this case, including CMALT.
We now modify to grant defendant's motion to dismiss the pre-EOD claims that it was required to enforce the mortgage sellers' obligation to repurchase defective loans in HEMT and CMALT, the pre-EOD claims based on a breach of covenant in CMALT, and the post-EOD claims for the eight trusts at issue.
Discussion In assessing an appeal that arises from a motion to dismiss brought pursuant to CPLR 3211, our analysis of plaintiffs' claims is limited to the four corners of the pleading (Johnson v Proskauer [*3]Rose LLP, 129 AD3d 59, 67 [1st Dept 2015]). Plaintiffs' allegations must be given liberal construction and the facts as alleged in the complaint accepted as true (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). Our determination is limited to whether the facts as alleged in the complaint fit within any cognizable legal theory (id.). Therefore, we must afford plaintiffs the benefit of every possible favorable inference and any ambiguities in the allegations of the complaint must be resolved in favor of plaintiffs (JF Capital Advisors, LLC v Lightstone Group, LLC, 25 NY3d 759, 764 [2015]).
Pre-EOD Repurchase Enforcement Claims for HEMT and CMALT The PSAs for the trusts each contain slightly different definitions of an EOD, but they generally provide that an EOD occurs if there is:
"any failure by the Master Servicer or a Servicer to observe or perform in any material respect any other of the covenants or agreements on the part of the Master Servicer or the Servicer contained in this Agreement . . . which failure (i) materially affects the rights of the Certificateholders and (ii) shall continue unremedied for a period of 60 days after the date on which written notice of such failure shall have been given to the Master Servicer or the Servicer by the Trust Administrator or the Depositor, or to the Master Servicer or the Servicer and the Trust Administrator by the Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates."
Prior to an EOD, the trustee's duties are limited to those specifically outlined in the PSA. Since the PSAs for HEMT and CMALT contain differing terms, we will analyze each trust separately.
HEMT 2005-5 Trust Section 8.01 of the HEMT PSA, entitled "Duties of the Trustee," provides in pertinent part:
"The Trustee, prior to the occurrence of an Event of Default and after the curing of all Events of Default that may have occurred, shall undertake to perform such duties and only such duties as are specifically set forth in this Agreement. In case an Event of Default has occurred and remains uncured, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.
. . .
"No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct; provided, however, that:
(i) unless an Event of Default actually known to the Trustee shall have occurred and be continuing, the duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement, the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement, no implied covenants or obligations shall be read into this Agreement against [*4]the Trustee . . . ."
Relying on section 8.01, defendant argues that the only pre-EOD duty that section 2.03(g) of the HEMT PSA, entitled "Representations and Warranties of the Seller, Servicers and Special Servicer," imputes on the trustee, is the duty to provide notice of the R&W breaches it discovers. Section 2.03(g) provides in pertinent part:
"Upon discovery by any of the parties hereto of a breach of a representation or warranty made pursuant to Section 2.03(f) . . . the party discovering such breach shall give prompt notice thereof to the other parties. The Seller hereby covenants that within 120 days of the earlier of its discovery or its receipt of written notice from any party of a breach of any representation or warranty made by it pursuant to Section 2.03(f) which materially and adversely affects the interests of the Certificateholders in any Mortgage Loan sold by the Seller or Depositor, it shall cure such breach . . . and, if such breach is not so cured, shall . . . repurchase the affected Mortgage Loan from the Trustee . . . ." (emphasis added).
In opposition, plaintiffs contend that section 2.06 of the HEMT PSA, entitled "Execution and Delivery of Certificates," requires the trustee to enforce the seller's repurchase obligation. Section 2.06 states:
"The Trustee agrees to hold the Trust Fund and exercise the rights referred to above for the benefit of all present and future Holders of the Certificates and to perform the duties set forth in this Agreement to the best of its ability, to the end that the interests of the Holders of the Certificates may be adequately and effectively protected" (emphasis added).
Plaintiffs contend that by agreeing to the general language in section 2.06, defendant assumed the affirmative duty to enforce the repurchase protocol contained within section 2.03. Plaintiffs argue that Supreme Court correctly held that "[s]ection 2.06 evinces an express obligation on [defendant]" to exercise the rights referred to above, and by agreeing to exercise those rights, "[defendant] assumed an affirmative duty to enforce the repurchase obligation" in section 2.03.
It is undisputed that the HEMT PSA sets forth defendant's pre-EOD duties under the trust agreement. It is also well established that the duties of an indenture trustee are strictly defined and limited to the terms of the agreement (see AG Capital Funding Partners, L.P. v State St. Bank & Trust Co., 11 NY3d 146, 156 [2008]). As such, we conclude that the HEMT PSA does not clearly assign defendant the duty to enforce the seller's obligation to repurchase defective loans.
Upon review of the relevant documents, defendant's pre-EOD duties appear to be both limited and ministerial in nature. Therefore, it is not logical that defendant would be tasked with the general duty to advance the fund's interest in any manner other than subscribed in the agreement (see generally CFIP Master Fund, Ltd. v Citibank, N.A., 738 F Supp 2d 450, 473 [SD NY 2010]).
However[*5], courts must construe contracts in a "manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect" (Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d 572, 581 [2017] [internal quotation marks omitted]; see also Beal Sav. Bank v Sommer, 8 NY3d 318, 324 [2007]). We cannot interpret contract provisions in a way that adds, removes or distorts the meaning of any words or phrases (Nomura, 30 NY3d at 581). We must consider not only the explicit language of the agreement, but also the meaning of key terms used therein.
In construing this agreement, we have considered the distinct difference between a right and a duty under the PSA. Under this analysis, even if we credited plaintiffs' argument that section 2.06 incorporates the right to enforce the repurchase protocol and did not consider the lack of specificity of the referenced clause, the overt language relied on by plaintiffs demonstrates that they are discussing an action that may be exercised at a party's discretion. However, having the right to do something is not the same as having the affirmative duty to do that same thing (see Prickett v New York Life Ins. Co., 896 F Supp 2d 236, 251-252 [SD NY 2012]).
Similarly, section 2.06 does not contain the requisite detail of an express enforcement obligation and therefore cannot be considered a "duty" that is "specifically set forth" in the PSA (Western & Southern Life Ins. Co. v Bank of N.Y. Mellon, 2019 Ohio 388 [1st Dist], 129 NE3d 1085, 1093-1094 [2019]; see Commerzbank AG v U.S. Bank Natl. Assn., 457 F Supp 3d 233, 257-258 [SD NY 2020]). Prior to an EOD, the trustee's duties are limited to those specifically set forth in the PSA. Therefore, if the "trustee's duties included the obligation to require [the seller] to substitute or repurchase mortgage loans, those duties would [need to be] specifically set forth in the PSA" (Western & Southern Life Ins. Co., 129 NE3d at 1093-1094; see Commerzbank AG, 457 F Supp 3d at 257-258). Critically, the HEMT PSA contains no delineated obligation of the trustee to enforce repurchase remedies against the seller and instead imposes a pre-EOD duty to "give prompt notice" of its discovery of a breach of any R&W.
Plaintiffs' interpretation of section 2.06 contradicts the language of section 8.01 (i) of the PSA. While, plaintiffs contend that any ambiguity should be construed against defendant, we find that the PSA is not ambiguous as to this issue.
When construing a contract, it is important to determine if the parties have expressly omitted terms that are readily found in similar contracts. If it is apparent that the parties intended to omit the language at issue, we are precluded from implying those terms from the general language of the agreement (see Quadrant Structured Prods. Co., Ltd. v Vertin, 23 NY3d 549, 560 [2014]). The PSAs for other trusts in this action specifically required defendant to enforce the [*6]seller's and servicer's obligations to repurchase defective loans (e.g., GSR 2006-1F; GSR 2007-1F; TBW 2006-5).
Nevertheless, we need not reach plaintiffs' contra proferentem argument because it is inapplicable to sophisticated parties such as plaintiffs (see Westchester Fire Ins. Co. v MCI Communications Corp., 74 AD3d 551 [1st Dept 2010]). More importantly, even if there were an ambiguity, any inconsistencies between a general provision such as section 2.06 and a specific provision such as section 8.01, would be resolved in favor of the specific provision (see Bank of Tokyo-Mitsubishi, Ltd., N.Y. Branch v Kvaerner a.s., 243 AD2d 1, 8 [1st Dept 1998]).
Accordingly, we find that the HEMT PSA does not expressly provide that defendant had a pre-EOD duty to enforce the mortgage seller's obligations to repurchase defective loans.
CMALT 2007-A7 Trust As it pertains to the CMALT trust, plaintiffs fail to point to a specific section of the CMALT PSA requiring the responsible party, seller or depositor, to repurchase defective loans. Instead, plaintiffs contend that the CMALT PSA contains covenants requiring the responsible party to repurchase loans with incomplete mortgage files, a notion that Supreme Court held defendant did not properly refute.
However, section 8.1 of the CMALT PSA provides that "[u]nless the Trustee has notice that an [EOD] is continuing, [it] will only have those obligations that are specifically set forth in this agreement, and no implied covenants of the Trustee will be read into this agreement." Therefore, defendant's pre-EOD duties, as relevant to this appeal, are limited to those set forth in section 2.3 of the CMALT PSA, entitled "Repurchase or Substitution of Mortgage Loans," which provides in pertinent part:
"Each of CMSI, CitiMortgage and the Trustee will promptly notify the other parties if it discovers a breach of any of the representations and warranties in section 2.2 that materially and adversely affects the interests of the certificate holders or any insurer in a mortgage loan (including a mortgage loan substituted for a nonconforming mortgage loan pursuant to section 2.4) (a material breach).
"If CMSI is notified of a material breach, CMSI will have 60 days after notice (or a longer period approved in advance in writing by a Responsible Officer of the Trustee) to cure the breach in all material respects, or to repurchase the mortgage loan or substitute eligible substitute mortgage loans, as provided in this section 2.3."
Based on this language, we find that section 2.3 of the CMALT PSA does not expressly provide that defendant has a pre-EOD duty to enforce the responsible party's obligation to repurchase loans where a material R&W breach occurred.
Pre
EOD Claims for CMALT Based on Covenants As an initial matter, as to the pre-EOD claims for the CMALT PSA based on covenants, we find that defendant has fully articulated its argument that it does not have a pre-EOD duty to enforce R&W breaches or covenant [*7]breaches, and it is therefore preserved for our review (but see 220-52 Assoc. v Edelman, 18 AD3d 313, 315 [1st Dept 2005]).
Turning to the merits, we find that plaintiffs cannot base their claim on a breach of the seller's or depositor's covenants. As we held in Sheth v New York Life Ins. Co. (273 AD2d 72, 73 [1st Dept 2000]), an obligation cannot be implied "which would be inconsistent with other terms of the [PSA]." Under the CMALT PSA, section 2.3 contains defendant's relevant contractual duties prior to an EOD. Whether the parties refer to the covenant as an incomplete mortgage file or a failure to safeguard the mortgage documents, the result is no different. Section 2.3 refers specifically to the trustee's duty to notify other parties when it discovers a breach of any R&W that materially and adversely affects the interests of the certificateholders. Any duty beyond that which is clearly established by this language would be an implied duty that cannot stand.
If the parties intended for a breach of covenant to trigger the repurchase protocol, they could have included such language in section 2.3. Plaintiffs concede that there is no R&W concerning the completeness of the mortgage file. Thus, plaintiffs cannot avoid the PSA language by pleading their claim as a violation of covenants.
Revealingly, the excerpts of the CMALT PSA that were provided to this Court clearly establish that its drafter differentiated between an R&W and a covenant throughout the contract. As noted above, section 2.3 refers solely to R&Ws. However, in defining an EOD, section 7.1 (c) includes the language, "CitiMortgage fails to observe or perform . . . any . . . covenant or agreement of CitiMortgage set forth in the certificates or this agreement." Thus, we find that the PSA, "as written, means what it says" and should be enforced according to its terms (Matter of Part 60 Put-Back Litig., 36 NY3d 342, 348 [2020]; see also Nomura, 30 NY3d at 581).
ost-EOD Claims: Written Notice Plaintiffs' argument that the complaint sufficiently alleges that written notice was sent to the servicer is unavailing. A servicer's annual assessment—i.e., a document created by a servicer—is not notice to a servicer. Moreover, each PSA specifies who can send written notice, and, for obvious reasons, no PSA says a servicer can send notice to itself (see e.g. LDIR, LLC v DB Structured Prods., Inc., 172 AD3d 1, 3 [1st Dept 2019] [provision that required party to give notice to itself was "nonsensical"]). Similarly, the letters defendant sent to servicers did not identify the loan or trust alleged to be in breach. Therefore, they are insufficiently specific to constitute written notice (see U.S. Bank N.A. v DLJ Mtge. Capital, Inc., — NY3d &mdash, 2022 NY Slip Op 01866 [2022]).
As for plaintiffs' cross appeal, Supreme Court correctly determined that plaintiffs' post-EOD claims as to HEMT should be dismissed for failure to allege that defendant had written notice of the EOD. Plaintiffs' contention [*8]that section 8.02 (viii) of the HEMT PSA applies only to constructive notice, not actual notice, is unavailing (see Phoenix Light SF Ltd. v Bank of N.Y. Mellon, 2017 WL 3973951, *17, 2017 US Dist LEXIS 145044, *45 [SD NY, Sept. 7, 2017, No. 14-CV-10104 (VEC)]). Section 8.02 (viii) provides that "the Trustee shall not be deemed to have knowledge of an [EOD] until a Responsible Officer of the Trustee shall have received written notice thereof." However, other provisions located within the HEMT PSA have knowledge requirements that are distinctly different from section 8.02. Specifically, section 7.03 provides, the "[t]rustee shall transmit . . . notice of each such [EOD] hereunder actually known to the [t]rustee" and section 8.01 contains the same "actually known" language.
Similarly, other PSAs provide that "[t]he Trustee shall not be deemed to have knowledge of any [EOD] . . . unless a Responsible Officer of the Trustee shall have received written notice thereof . . . or a Responsible Officer of the Trustee has actual notice thereof." Thus, the omission of the "actual notice" language from section 8.02 (viii) of the HEMT PSA indicates that the provision means what it says: "the Trustee shall not be deemed to have knowledge of an Event of Default until a Responsible Officer of the Trustee has received written notice thereof" (see Phoenix, 2017 WL 3973951 at *17, 2017 US Dist LEXIS 145044 at *45; Part 60 Put-Back Litig., 36 NY3d at 348; Nomura 30 NY3d at 581).
Contrary to plaintiffs' claim, section 8.02 (viii) is not ambiguous. However, even if there were an ambiguity, we would be compelled to conclude that the parties' omission of terms that are readily found in other, similar contracts was intentional (Quadrant, 23 NY3d at 560). Similarly, defendant's interpretation of section 8.02 (viii) does not violate Real Property Law § 126 (the Streit Act) (see Phoenix Light SF Ltd. v Deutsche Bank Natl. Tr. Co., 172 F Supp 3d 700, 723 [SD NY 2016]; Blackrock Allocation Target Shares: Series S. Portfolio v Wells Fargo Bank, N.A., 247 F Supp 3d 377, 404 [SD NY 2017]).
Accordingly, the order of the Supreme Court, New York County (Joel M. Cohen, J.) entered November 5, 2020, which, insofar as appealed from as limited by the briefs, denied defendant's motion pursuant to CPLR 3211 to dismiss claims that it was required to enforce the mortgage sellers' obligation in HEMT and CMALT to repurchase defective loans, the pre-EOD claims based on breach of a covenant, as opposed to breach of a representation and warranty, in CMALT, and the post-EOD claims for CMALT and seven other trusts, and granted defendant's motion as to post-EOD claims for HEMT, should be modified, on the law, to grant defendant's motion to dismiss the pre-EOD claims that it was required to enforce the obligation of the seller of mortgage loans in HEMT and CMALT to repurchase defective loans, claims based on breach of a covenant in CMALT, and the post-EOD claims for the eight trusts at issue, and [*9]otherwise affirmed, without costs.
All concur.
Order, Supreme Court, New York County (Joel M. Cohen, J.) entered November 5, 2020, modified, on the law, to grant defendant's motion to dismiss the pre-EOD claims that it was required to enforce the obligation of the seller of mortgage loans in HEMT and CMALT to repurchase defective loans, claims based on breach of a covenant in CMALT, and the post-EOD claims for the eight trusts at issue, and otherwise affirmed, without costs.
Opinion by Pitt, JJ.
Renwick, J.P., Oing, Singh, Scarpulla, Pitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 9, 2022

Footnotes

Footnote 1: The trusts at issue in this case are: the Home Equity Mortgage Trust 2005-5 (HEMT); CitiMortgage Alternative Loan Trust, Series 2007-A7 (CMALT); CSAB Mortgage-Backed Trust (CSAB) 2006-1; CSAB 2006-3; CSAB 2006-4; CSMC Mortgage-Backed Trust 2007-1 (CSMC); GSR Mortgage Loan Trust (GSR) 2006-1F; GSR 2007-1F; and TBW Mortgage-Backed Trust Series 2006-5 (TBW).

Footnote 2: Although not at issue on this appeal, Supreme Court also granted defendant's motion to dismiss plaintiffs' pre-EOD claims that defendant had the duty to give notice of R&W breaches for the GSR Trusts.